James M. TUNNELL, Jr., and
Mildred S. Tunnell

v.

The UNITED STATES of
America, Appellant.

Robert W. TUNNELL and Eolyne
K. Tunnell

v.

The UNITED STATES, Appellant.

Nos. 74–1675, 74–1678.

United States Court of Appeals,
Third Circuit.

Argued Feb. 7, 1975.

Decided March 11, 1975.
As Amended April 23, 1975.

Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Richard W. Perkins, William A. Friedlander, Tax Div., Dept. of Justice, Washington, D. C., for appellant.

James M. Tunnell, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Robert W. Tunnell, Georgetown, Del., pro se and as attys. for other appellees.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

ROSENN, Circuit Judge.

Taxpayers, Eolyne K. and Robert W. Tunnell, and Mildred S. Tunnell and James M. Tunnell, Jr., formed two partnerships to develop and operate two mobile home parks known as "Pot Nets" and "Indian Landing" in Sussex County, Delaware.[1] Third parties lease lots on a long term basis in both parks for the purpose of placing thereon mobile homes for use as summer and weekend dwellings.

Both mobile home parks are situated on land which, in its original state, was part marsh, part cultivated, and part forested. Low-lying marshes separated the wooded and cultivated areas from the open waters of Indian River Bay, and, being soft and wet, were unsuited for either buildings or roads. In order to construct the parks, taxpayers designed and dredged channels, called lagoons, and used the material produced by the dredging to fill the marshland, thus enabling the construction thereon of roads, and recreational and living areas.

Bulkheaded lagoons, more aesthetically pleasing than the marshlands, provide a safe and very convenient harbor for the boats of the residents of the parks. The lagoons also provide improved surface water drainage for the flat and low terrain on which the parks were built.

The wooded areas in their original state also were unsuited for construction. Taxpayers therefore thinned out portions of these areas and cleared the remaining land. All of the solid land areas were then graded, shaped, and landscaped for use as home sites, roads, and recreational areas. When completed, the parks featured home sites, private roads, street lights, water and electricity lines, landscaping, and various recreational facilities.

On the partnership tax returns for the years in dispute, taxpayers had depreciated the total cost of constructing the lagoons. Useful lives of ten and twenty years were claimed for the Pot Nets and Indian Landing lagoons, respectively. Taxpayers also had deducted as operating expenses the costs of clearing, grading, landscaping, and staking out the mobile home lots.

The Commissioner disallowed these deductions. Taxpayers paid under protest the taxes allegedly due plus interest, and then brought suit in the district court for a refund. In the district court, they sought to depreciate as capital expenditures the amounts previously deducted as operating expenses in the returns.

The district court held that the lagoons were depreciable, and allowed the depreciation deductions to be based upon the total cost of building the lagoons. The court equated the useful lives of the lagoons with the useful lives of the parks, which it believed the Commissioner had agreed were twenty years. The court also held depreciable over a period of twenty years the costs of clearing, landscaping, and staking out the land because the benefits of these expenditures were peculiar to the operation of the parks. Depreciation deductions for the

1. Our statement of the facts has been limited to those relevant to this appeal. A fuller version appears in the opinion of the district court. 367 F.Supp. 557 (D.Del.1974).

expenses of grading the land were disallowed because the grading produced benefits which would run with the land after the operation of the parks had terminated. The useful lives of the grading benefits therefore were indeterminate and not depreciable.

The Government appeals. It now concedes that the costs of designing and constructing the lagoons, and of clearing, staking out, and landscaping the land were depreciable. Based on the IRS Depreciation Guidelines, Rev.Proc. 62–21, 1962–2 Cum.Bull. 418, the Government also concedes the useful lives of the lagoons and of the landscaping to be twenty years. The Government argues, however, that the district court erred in calculating the depreciable basis of the lagoons, and in assigning useful lives of twenty years to the clearing, landscaping, and staking out of the land. We find merit in the Government's contentions, vacate the judgment, and remand.

The basic rule, according to Treasury regulations, is that depreciation will be allowed on that sum which will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property less its salvage value. Treas.Reg. § 1.167(a)–1(a) (1956). Salvage value is the "amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business . . .." Treas.Reg. § 1.167(a)–1(c)(1) (1956). This rule of depreciation, controversial as it may have been at one time, was approved in Massey Motors v. United States, 364 U.S. 92, 80 S.Ct. 1411, 4 L.Ed.2d 1592 (1960).

■■■ The district court, in allowing taxpayers to depreciate the total cost of

designing and constructing the lagoons, apparently assumed that the assets created by these expenditures would have no value at the end of twenty years. Two assets were created: the lagoons themselves, and the material used to fill, grade, and convert the surrounding marshlands into dry usable land. The lagoons, the Government now concedes, will be worthless at the end of twenty years. The fill, however, created additional value in the land, a value having an indeterminate life, and this fill, therefore, is not subject to depreciation.[2] Treas.Reg. § 1.167(a)–2 (1956). We see no reason to disregard this value merely because it is a by-product of the dredging. Indeed, deducting such value in calculating the amount to be depreciated is consistent with the intent of Congress "not to make taxpayers a profit . . . but merely to protect them from a loss." Massey Motors v. United States, *supra*, 364 U.S. at 101, 80 S.Ct. at 1416. We believe, therefore, the proper amount recoverable by depreciation is the total cost of designing and constructing the lagoons less the sum it would have cost the taxpayers to obtain the necessary quantity of fill from their own property, if possible, or elsewhere to grade and convert the marshlands into suitable, dry land for the operation of mobile parks.[3]

■■■ The Government argues, however, that since taxpayers, by not proving the cost of the land fill and thereby not proving this excess amount, did not meet their burden of proving the amount to which they were entitled as a depreciation deduction. We agree that taxpayers have the burden in a refund suit of proving not only an entitlement to a refund but also the amount of the entitlement. Crosby v. United States, 496 F.2d 1384 (5th Cir. 1974). Had the taxpayers

---

**2.** Taxpayers argue that since the lagoons, having useful lives of twenty years, will fill with the dredged material, the fill also has a useful life of only twenty years, and thus will be worthless at the end of that period.

We do not believe that the record supports the assertion that the lagoons will be filled with the dredged material. Indeed the argument is directly contradicted by the district

court's finding, which we believe is supported by the record, that the land improved by the fill will not wear out. 367 F.Supp. at 563.

**3.** This formulation assumes that the total cost of designing and constructing the lagoons exceeds the cost of the fill. If this assumption proves to be incorrect, taxpayers will not be able to recover any amount in depreciation.

been aware that this excess amount was to have been in controversy, we would also agree that the taxpayers would not be entitled to any refund for depreciation of the lagoons. Both the deficiency notice[4] and the pretrial order,[5] however, show that the Government disallowed the depreciation deductions not because the deductions disregarded the salvage value of the land fill, but because the Government regarded the lagoons as inextricably associated with the land and not depreciable at all. Not until the concluding testimony of the last witness did the Government make explicit the theory upon which it now relies. Under these circumstances, we believe it unfair to deny taxpayers their deductions for failure to meet their burden of proof. We believe that, under the circumstances of this case, justice requires that we remand to the district court so that taxpayers may have the opportunity to prove the amount on which depreciation properly may be recovered.[6]

■ With respect to the deductions for clearing and staking out the land, the district court, under the impression that the Commissioner had agreed to useful lives of twenty years for the parks, equated the useful lives of these improvements with the useful lives of the parks. We find no fault with such equation. An examination of the record, however, discloses that while the Commissioner had agreed that many of the various physical components of the parks had useful lives of no more than twenty years, he had made no such agreement about the useful lives of the parks. To equate the useful lives of the parks with the useful lives of many of the parks' physical components was error.

Taxpayers argue that the useful lives of the parks were twenty years for two reasons: (1) so many of the physical components of the parks would wear out within twenty years that the usefulness of the parks would likewise terminate;[7] and (2) the value of the parks inextricably was tied to the lagoons whose useful lives the Government concedes to be twenty years.

A review of the record leaves us unclear as to whether taxpayers have carried their burden of proof on either of their contentions. Therefore, we also remand the case to the district court for further evidence and findings on this issue. *See* Hoffman Motors Corp. v. United States, 473 F.2d 254 (2d Cir. 1973).

---

4. The deficiency notice provided in pertinent part:

> The property in this case does not meet any of the requirements necessary for the application of the depreciation deduction . . . .. The costs of lagoons that is [sic] being disallowed consisted of the initial dredging of the lagoons. In conclusion, a taxpayer must show clear provision for any deduction claimed and the deduction in this case does not qualify under Section 167, but represents a capital expenditure that should be added to the cost of the land. It is clear that land or any cost that is inextricably associated with land is not subject to the depreciation allowance. The reason for this is that it has a life that is not susceptible to measurement . . . .. Therefore, . . . the depreciation deduction is being disallowed.

5. The pretrial order provided in pertinent part:

> (d) . . . Defendant contends that [the expenditures for creating the lagoons] are for permanent land improvements . . . with indeterminable useful lives for which no depreciation or expense deductions are allowable . . . ..
>
> \*   \*   \*   \*   \*   \*
>
> (i) Defendant expects to prove that plaintiffs are not entitled to take depreciation deductions for the cost of the initial dredging of lagoons and permanent land improvements . . . ..

6. Since we must remand, we deem it appropriate to note that the Government's brief concedes that taxpayers' costs for designing and laying out the lagoons are depreciable over the useful life of the lagoons. These costs, however, were lumped together with payments for staking out mobile home lots and were not separately established. In view of our holding, a breakdown may be necessary should the district court determine that the useful life of the parks *qua* parks exceeds twenty years.

7. The physical components that will wear out include water systems, electrical systems, television equipment, streets, street lights, playground equipment, piers, docks, bulkheading, slips, groins, jetties, and swimming pools.

To be successful on remand, taxpayers must show that the useful lives of the parks inextricably are related to the useful lives of the lagoons or to the sum of the parks' physical components that will wear out within twenty years so that the parks' usefulness *qua* parks thereupon will terminate.

The judgment of the district court will be vacated and the case will be remanded for further proceedings consistent with this opinion.

The parties shall bear their own costs.