566 F.2d 50
 77-2 USTC P 9703
 Charles O. BOYNTON, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Counterclaimant-Appellee.
Abe TAPIA, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Counterclaimant-Appellee.
 Nos. 76-1639 and 76-1638.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 3, 1977.
Rehearing and Rehearing En Banc Denied Dec. 9, 1977.
 
 Phillip Singer, George T. Altman, Beverly Hills, Cal., for plaintiff-appellant.
 J. Clancy Wilson, Asst. U.S. Atty., Los Angeles, Cal., Earl J. Silbert, U.S. Atty. Gen., Dept. of Justice, Washington, D.C., M. Carr Ferguson, Asst. Atty. Gen., U.S. Dept. of Justice, Tax Div. App. Section, Washington, D.C., for defendant-counterclaimant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before ELY and HUFSTEDLER, Circuit Judges, and LINDBERG, District Judge.*
 ELY, Circuit Judge:
 
 
 1
 Tapia and Boynton appeal from a judgment against them for the balance of unpaid taxes assessed under section 6672 of the Internal Revenue Code of 1954. The appellants were employees of Joint Venture of the Northeast Valley (Joint Venture), a non-profit corporation. Joint Venture's function was to provide community services in the Los Angeles, California, area under a contract with the Economic Youth and Opportunities Agency (EYOA). EYOA provided all the funds for Joint Venture's operations. Joint Venture obtained these funds by submitting invoice transmittals to EYOA for amounts expended in operating. Included on these invoice transmittals were payroll summaries revealing the gross payroll, including amounts for employee withholding and FICA taxes. Joint Venture received monies from EYOA for the entire gross payroll, including taxes for the tax quarters ending September 30 and December 31, 1971. None of these tax monies were paid to the Government, the funds being used to pay other creditors, primarily employees with wage claims. Tapia served as the Executive Director of Joint Venture and Boynton as the Administrative Assistant. The directors of Joint Venture were community citizens serving as volunteers without compensation. Although directors only were authorized to sign checks for Joint Venture, both Tapia and Boynton were active in the financial management and control of the corporation, preparing budgets and tax returns, approving billings and payments, and preparing checks.
 
 
 2
 In 1973 the Government assessed the 100% penalty tax under 26 U.S.C. § 6672 against Tapia and Boynton for their failure to pay over the withholding and FICA taxes for the third and fourth quarters of 1971. The total amount assessed was $12,764.55. Appellants paid $131.50, and pursuant to 28 U.S.C. § 1346 instituted a suit for refund in the District Court. The Government contested the refund action and counter-claimed for the unpaid balance of the assessed tax. The District Court found that it lacked jurisdiction over the appellants' refund claim because the entire amount of the assessment, or some properly divisible part thereof, had not been paid. The court, however, retained jurisdiction over the counterclaim. It found that both Tapia and Boynton were responsible persons within the meaning of section 6672 and that they had willfully failed to pay over the taxes by according to other creditors preference over the Government. Judgment in the Government's favor was entered for the full amount of the counterclaim. Tapia and Boynton appeal.
 
 
 3
 Both the appellants and the Government have presented this appeal as involving the sole issue of whether the District Court correctly found that the actions of Tapia and Boynton were willful within the meaning of section 6672. We pass consideration of that issue, however, and dispose of this appeal on jurisdictional grounds that we feel obliged to raise sua sponte.
 
 
 4
 It has long been established that partial payment of assessed taxes or a proposed deficiency is insufficient to support jurisdiction in the District Court of a refund suit under 28 U.S.C. § 1346. Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). An exception to the Flora rule has developed with respect to divisible tax assessments. Under the doctrine of Steele v. United States, 280 F.2d 89 (8th Cir. 1960), a taxpayer assessed under section 6672 need only pay the divisible amount of the penalty assessment attributable to a single individual's withholding before instituting a refund action. This relaxed requirement is based on the theory that section 6672 assessments represent a cumulation of separable assessments for each employee from whom taxes were withheld. Thus, under Steele, the taxpayers were "legally entitled to make payment of the penalty applicable to the withheld taxes of any individual employee, to make claim for refund, and to institute suit for recovery, as a means of settling the question of the right of the government to have made penalty assessment against them in the circumstances of the situation." Id. at 91.
 
 
 5
 Here, the situation is different. We therefore conclude that the District Court properly dismissed the appellants' refund suit after finding that full payment of the entire assessment or payment of the portion attributable to the withholding of a single employee had not preceded the commencement of the action.
 
 
 6
 Nonetheless, the District Court assumed jurisdiction over the Government's counterclaim and rendered a decision on the merits. The Government's counterclaim had an independent federal jurisdictional basis, since, had the suit been directly initiated by the Government, there would have been clearly prescribed jurisdiction in the District Court under 28 U.S.C. § 1340 and 26 U.S.C. § 7402. In this case, as well as the typical section 6672 case, an action by the Government for the collection of the balance of an assessment, or counterclaim in a refund suit to that effect, involves exactly the same issues as the taxpayer's refund suit. The resolution of such issues would be dispositive of the taxpayer's right to a refund of his partial payment of the taxes. While we recognize that a District Court generally may adjudicate a counterclaim having an independent basis for federal jurisdiction despite the dismissal of plaintiff's action for lack of subject matter jurisdiction, DHL Corporation v. Loomis Courier Service Inc., 522 F.2d 982, 985 (9th Cir. 1975); National Research Bureau, Inc. v. Bartholomew, 482 F.2d 386 (3d Cir. 1973), we think the application of that general principle should be inapposite in the situation where the taxpayer has failed to meet even the most minimal payment requirement needed for subject matter jurisdiction in federal court. We hold that the proper course of action for the District Court would have been to dismiss the Government's counterclaim after finding that it lacked jurisdiction over the taxpayer's refund suit.
 
 
 7
 Congress has established a precise and detailed jurisdictional scheme to deal with judicial adjudication of federal tax disputes. When a taxpayer has been notified of a proposed tax deficiency, he has the option of either (1) filing a petition in the Tax Court, or (2) paying the tax, applying for a refund credit and, if that is not allowed, suing in a federal court for recovery of the alleged overpayment. If the taxpayer elects to sue for refund in the Court of Claims pursuant to 28 U.S.C. § 1491 or in the District Court under 28 U.S.C. § 1346, payment of the full tax must, except in situations involving divisible taxes, precede the refund action. There is no such requirement in the Tax Court when the taxpayer seeks to contest a notice of deficiency.[1] However, because a section 6672 assessment need not be preceded by the normally required deficiency notice, Shaw v. United States, 331 F.2d 493, 494-95 (9th Cir. 1964), a condition precedent needed for Tax Court jurisdiction, a deficiency notice, is not present. DaBoul v. Commissioner of Internal Revenue, 429 F.2d 38 (9th Cir. 1970). Consequently, the taxpayer is foreclosed from litigating the validity of the penalty assessment in Tax Court. Wilt v. Commissioner of Internal Revenue, 60 T.C. 977 (1973). Notwithstanding his inability to litigate in the Tax Court,[2] the taxpayer is still required under the Steele doctrine to pay at least the part of the 100% section 6672 assessment attributable to the withholding taxes of any one employee before he can maintain a refund action.[3] In any event, the taxpayer is entitled to whatever actual or perceived benefits[4] that might be incidental to litigating in District Court only if full payment of at least a properly divisible portion of the disputed taxes has been made.[5] The jurisdictional approach employed in this case vitiates the heart of this elaborate scheme, payment of the taxes before litigation of the issues in a District Court. Appellants did not pay even the miniscule amount needed for satisfaction of the penalty assessed based on the failure to remit to the Government the withholding taxes of a single employee. By retaining the Government's counterclaim after dismissal of the refund suit for lack of subject matter jurisdiction, the court effectively allowed the dispositive issues of the taxpayer's refund suit to be resolved in the District Court without the required prior payment of taxes assessed. Moreover, those issues were decided in a suit in which the initiative as to timing and choice of forum[6] was taken by the taxpayer. Allowing the controlling issues of taxpayer's refund suit to be decided in a procedural posture in which the plaintiff is the defending party may well create tactical advantages, such as possible transfers of burdens of proof, see Psaty v. United States, 442 F.2d 1154, 1158-63 (3rd Cir. 1971), that would not exist had the refund suit been properly brought.[7] The full impact of the Flora decision has already been mitigated in the section 6672 situation by substantially decreasing the prepayment burden on refund suits. Yet, allowing taxpayers to litigate refund claims indirectly without meeting even the reduced requirements of Steele permits them to circumvent almost completely the primary jurisdictional prerequisite for litigation of refund claims in federal court. We cannot escape the conclusion that this procedure is an unwarranted subversion of the jurisdictional scheme "which is a keystone in a carefully articulated and quite complicated structure of tax laws."[8]
 
 
 8
 The precise issue before us now is whether the Government's counterclaim for the unpaid balance of a section 6672 assessment should have been retained after taxpayers' refund suit was dismissed on jurisdictional grounds because they had not paid the entire tax, or any divisible portion thereof, in advance of filing their refund action. We cannot find that this exact issue has been the subject of decision in our court or in any other Circuit.[9] Only one case in our Circuit has given the general area extended discussion. In Freeman v. United States, 265 F.2d 66 (9th Cir. 1959), a Navy serviceman, Freeman, brought suit in the District Court for refund of taxes alleged by him to have been erroneously withheld from his retirement pay. As in the case before us now, the Government filed a counterclaim for the balance of taxes claimed to have been unpaid. The first issue before the Freeman court was whether the taxpayer could proceed with his refund suit notwithstanding his failure to pay the full assessed amount of taxes. In discussing the issue, the court analyzed the difficulties caused by assuming that the Government counterclaim would survive the dismissal of taxpayer's refund action:"In view of the counterclaim which has been interposed, this suit no longer involves only the right of the taxpayer to such a refund. It also involves the right of the government to recover the claimed balance of the assessed tax for 1952. Moreover, the right claimed by Freeman in his complaint and by the government in its counterclaim present precisely the same legal question based upon the identical and uncontroverted facts. . . . While the government wishes us to dismiss the complaint, it wants to proceed with the counterclaim. The latter request is a proper one, since the counterclaim has an independent basis in § 7401 of the Internal Revenue Code of 1954, 26 U.S.C.A., and 28 U.S.C.A. § 1345. But if we proceed with the counterclaim and the government prevails, this will also be dispositive of Freeman's refund claim, whether or not his complaint is dismissed. On the other hand, if we proceed with the counterclaim and Freeman prevails, prior dismissal of his complaint results in this absurdity: he would have to pay the balance of a tax which we have said he does not owe before he could enforce a refund of the amount erroneously withheld.
 
 
 9
 "We therefore conclude that regardless of whether Freeman's complaint, if it stood alone, would be vulnerable under the Flora rule, the presence of a counterclaim involving precisely the same issues, which the government desires to press, makes the application of that rule inappropriate here."
 
 
 10
 265 F.2d 66, 69 (footnotes omitted).
 
 
 11
 The court's conclusion that it was irrelevant whether or not the taxpayer paid the taxes in full makes the retention of counterclaims in our situation suspect.[10] If retention of a counterclaim after dismissal of taxpayer's refund suit for lack of subject matter jurisdiction renders inconsequential the prepayment requirement, a keystone factor in the tax litigation system, it is clear that the general principles of federal civil procedure are, in this singular aspect, incompatible with the intended operation of the tax laws. Validation of the jurisdictional approach used below could invite application of the principle on a broader scale, possibly leading to taxpayer abuses of jurisdictional requirements in non-divisible tax areas. We cannot believe that Congress intended the substance of the tax structure to be eviscerated by application of general procedural principles. While the convenience of the parties may be furthered by this method of adjudicating the issues, judicial administration and the effective operation of the tax system would best be served by adherence to the jurisdictional pattern designed by Congress.[11] Appellants should be required to meet at least the minimal payment requirement under Steele before having their liability resolved in a proceeding they initiated.[12]
 
 
 12
 By our decision here, however, we do more than engage in legal formalisms. Although the Government may immediately file an action identical to its dismissed counterclaim, substantial differences, in addition to those discussed earlier, exist between the two procedures. For example, when the Government is required to initiate judicial action for collection, the option available to the taxpayer of having the controlling issues litigated in the Court of Claims by paying fully (or partially paying and awaiting the Government's counterclaim) and seeking a refund is lost. Moreover, the taxpayer loses whatever ill-gotten tactical advantages, such as timing, there are to initiating judicial resolution of the dispute through an improper refund suit. If he elects not to pay the proper amount and seek refund, the Government retains the initiative in the dispute. In fact, without the prompting of an improper refund suit, the Government may not even choose to reduce the assessment to judgment, but may elect to proceed under its power of levy and distraint over the taxpayer's non-exempt property or seek enforcement of a tax lien.
 
 
 13
 Consideration of all these factors compel the conclusion that where claims by the Government for the collection of taxes may be dispositive of the issues in a taxpayer's refund suit, such claims should be prosecuted directly at the Government's initiative unless the refund suit is properly preceded by the required payment of the assessed taxes. By our present decision, however, we do not impugn the viability of otherwise allowable Government counterclaims filed in a refund suit over which a District Court properly has subject matter jurisdiction.[13] Our decision reaches only the situation where the taxpayer's refund suit is jurisdictionally improper due to his failure to pay the assessment fully or failure to pay a properly divisible portion of the assessment as required by the Steele line of authority. We do not reach the underlying merits of this particular appeal, expressing no opinion as to whether the appellants' conduct was willful within the meaning of section 6672.
 
 
 14
 The cause is reversed, and upon remand, the District Court will vacate its judgment.
 
 
 15
 Reversed and remanded, with directions.
 
 
 
 *
 Honorable William J. Lindberg, Senior United States District Judge, Seattle, Washington, sitting by designation
 
 
 [1]
 The taxpayer does have the option under 26 U.S.C. § 6213(b)(4) of paying the proposed deficiency and tolling the interest costs on the asserted deficiency without loss of Tax Court jurisdiction
 
 
 [2]
 Assessments made without prior notice of deficiency are constitutionally valid, notwithstanding the fact that Tax Court jurisdiction is foreclosed and full payment of at least a divisible part of the assessment must necessarily precede a refund suit in District Court. See Cohn v. United States, 399 F.Supp. 168 (E.D.N.Y.1975) (§ 6672 assessments); Fendler v. Commissioner of Internal Revenue, 441 F.2d 1101 (9th Cir. 1971) (§§ 6651 and 6654 tax penalty assessments)
 
 
 [3]
 This administrative practice of paying a divisible portion of the penalty assessment and waiting for the Government counterclaim has become routine in other circuits, see Kelly v. Lethert, 362 F.2d 629 (8th Cir. 1966), and appears to be the commonplace method of handling section 6672 assessment disputes in our circuit. See, e. g., Sorenson v. United States, 521 F.2d 325 (9th Cir. 1975); Dudley v. United States, 428 F.2d 1196 (9th Cir. 1970)
 
 
 [4]
 There are several factors which might affect the taxpayer's choice of forum as between the Tax Court, Court of Claims, and District Court. One factor is the right to a jury trial in District Court. 28 U.S.C. § 2402. Another factor might be the taxpayer's inability to pay the tax. Only a jeopardy assessment need be paid in advance of a redetermination action in the Tax Court. Yet another factor is that interest charges accrue on the unpaid deficiency during the litigation in Tax Court unless the taxpayer takes advantage of section 6213(b)(4) of the Code. On the other hand, the taxpayer is entitled to interest on amounts returned in a refund suit. Other factors relevant to a choice of forum include (1) the difference in the rights of appeal between the various courts, (2) the nature and force of Court of Appeals precedents in the various courts, (3) differences in burden of proof, and (4) the availability of a small claims procedure in the Tax Court. Some of these factors are, of course, inoperative where jurisdiction in the Tax Court is foreclosed
 
 
 [5]
 The Supreme Court exhaustively examined congressional intent in this area, as well as general tax policy, in determining that full payment of the assessed taxes was a jurisdictional prerequisite to a refund suit in the District Court. See Flora v. United States, 362 U.S. 145, 151-67, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). In footnote 38 of that decision, however, the Court indicated that different treatment might be allowable in dealing with divisible taxes such as excise taxes. This caveat was responsible for the birth of the Steele doctrine covering divisible taxes, including section 6672 assessments
 
 
 [6]
 The taxpayer could have attempted the refund action in the Court of Claims
 
 
 [7]
 Since the Government obviously is not required to counterclaim in a jurisdictionally improper refund suit, it might be contended that the ability of the taxpayer to utilize this procedure is dependent solely on the grace of the Government's decision to file a counterclaim rather than merely seeking a dismissal. Nonetheless, the taxpayer is yet able to assume the initiative in timing the suit and have the controlling issues resolved in the District Court without first properly paying the taxes when the Government does file a counterclaim. Moreover, the practice smacks odiously of a collusive attempt by the parties to confer federal subject matter jurisdiction by consent. Should the Government desire to press its claim, it should do so directly and not at the instigation of a taxpayer who is improperly utilizing the judicial process as a prod. We find it unlikely that some 17 years after Flora and Steele any plaintiff could reasonably believe that payment of only part of an assessment, or part of a divisible portion thereof, is sufficient to confer jurisdiction
 
 
 [8]
 Flora v. United States, 362 U.S. 145, 157, 80 S.Ct. 630, 637, 4 L.Ed.2d 623 (1960)
 
 
 [9]
 The cases involving this issue simply validate the practice of retaining the Government counterclaim after dismissal of the refund suit without discussion of its effect. See, e. g., Spivak v. United States, 370 F.2d 612 (2d Cir. 1967), cert. denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967); Anderson v. Myers, 170 F.Supp. 419 (N.D.N.Y.1958). It is, however, interesting to note that in Flora, the Government counterclaimed for the unpaid taxes after partial payment by the taxpayer. Although apparently with the Government's consent, on appeal to the 10th Circuit, and affirmed twice by the Supreme Court, the case was remanded to the District Court with instructions to vacate the judgment of the Government on its counterclaim and dismiss the entire action. Flora v. United States, 246 F.2d 929 (10th Cir. 1957), affirmed 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), affirmed on rehearing, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960)
 
 
 [10]
 We do not view Freeman as controlling on the issue of whether jurisdiction of the counterclaim should have been retained. Freeman treated the nonpayment of the full taxes as a possible failure to state a claim upon which relief could be granted, citing the first Flora opinion by the Supreme Court. Freeman v. United States, 265 F.2d 66, 69 n.3 (9th Cir. 1959). The decision on rehearing in that case, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), rendered after Freeman, made clear that the nonpayment of the assessed taxes was a jurisdictional defect. Moreover, the Freeman court was addressing the issue of whether full payment of the assessed tax was necessary, not whether retention of the counterclaim was proper. Thus, the issue under consideration here was not squarely confronted in Freeman
 
 
 [11]
 We can envision further extensions of the jurisdictional approach used below that would be even more patently subversive of the "pay first, litigate later" principle designed by Congress and affirmed by the Supreme Court. For example in United States v. Lease, 63-2 U.S. Tax Cas. P 9503 (D.Ct.N.Y.1963), the Government brought suit for the collection of taxes. The taxpayer, who had made a partial payment of the assessed tax, asserted a counterclaim for the refund of that payment. The court held that the counterclaim for refund could be maintained notwithstanding the taxpayer's failure to comply with the jurisdictional prerequisites, since the counterclaim arose from the same transaction or taxable event which was the basis of the Government's suit. Extending the logic of the Lease case to the situation wherein the taxpayer initiates the litigation by improper partial payment of the taxes followed by a refund suit, it might be possible for the original plaintiff-taxpayer to reassert his dismissed refund suit as a compulsory counterclaim, since it would then be, in effect, a counterclaim and fall under the court's ancillary jurisdiction. This approach has already been approved in non-tax litigation situations. See Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631 (3d Cir. 1961); Crest Auto Supplies, Inc. v. Ero Mfg. Co., 246 F.Supp. 224 (D.Ill.1965), affirmed 360 F.2d 896 (7th Cir. 1966)
 
 
 [12]
 Strict adherence to the prepayment requirement has the effect of preventing any taxpayer abuse of jurisdictional requirements. The only party who can be heard to complain of this requirement is the Government. No longer will it have the option of asserting a counterclaim in an improperly instituted refund suit. Nonetheless, the Government is not deprived of any right or remedy. If the Government at that time desires to press its collection claim, it may do so by seeking to dismiss the taxpayer's improvidently filed refund suit and bringing a direct action for collection in any of the forms available under the Code. This minor inconvenience is an insignificant cost to be incurred in obtaining full compliance with both the spirit and letter of the tax laws
 
 
 [13]
 For example, 26 U.S.C. § 7422(e) permits the Government, in order to preclude a multiplicity of suits, to intervene or counterclaim in refund suits that are properly brought. That section provides in pertinent part:
 "(e) Stay of proceedings. If the Secretary or his delegate prior to the hearing of a suit brought by a taxpayer in a district court or the Court of Claims for the recovery of any income tax, estate tax, or gift tax (or any penalty relating to such taxes) mails to the taxpayer a notice that a deficiency has been determined in respect of the tax which is the subject matter of taxpayer's suit, the proceedings in taxpayer's suit shall be stayed during the period of time in which the taxpayer may file a petition with the Tax Court for a redetermination of the asserted deficiency, and for 60 days thereafter. If the taxpayer files a petition with the Tax Court, the district court or the Court of Claims, as the case may be, shall lose jurisdiction of taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit for refund. If the taxpayer does not file a petition with the Tax Court for a redetermination of the asserted deficiency, the United States may counterclaim in the taxpayer's suit, or intervene in the event of a suit as described in subsection (c) (relating to suits against officers or employees of the United States), within the period of the stay of proceedings notwithstanding that the time for such pleading may have otherwise expired."
 We do not view section 7422(e) as controlling here. First, the operation of section 7422(e) contemplates that a suit for refund is pending in either the District Court or Court of Claims. We construe this language to refer only to jurisdictionally proper suits capable of being adjudicated on the merits by the proper tribunals. Second, a notice of deficiency during the pendency of such a refund suit, but prior to hearing, is required to trigger the stay and counterclaim provisions of section 7422(e). As noted above, no notice of deficiency is required in a section 6672 assessment. Moreover, our decision in no way violates the policies underlying the counterclaim provision of 7422(e). That section was designed to prevent jurisdictionally proper concurrent litigation in two forums, not litigation fragmented because the first suit was without a federal jurisdictional basis.
 We also do not find 28 U.S.C. § 1346(c) to be authoritative in this context. Section 1346(a)(1) confers jurisdiction on the District Courts and Court of Claims to entertain refund actions against the Government. Section 1346(c) provides for counterclaims by the Government:
 "(c) The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section."
 In order for the Flora doctrine, as applied in Steele, to have any vitality in section 6672 disputes, this language must be construed to allow counterclaims by the Government only in jurisdictionally proper taxpayer refund suits.
 We recognize that these sections might, under proper circumstances, become operative if a full proportionate payment is made of a properly divisible assessment under Steele v. United States, 280 F.2d 89 (8th Cir. 1960).