**MERHOW INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. S 79–51.**

United States District Court, N. D. Indiana, South Bend Division.

July 14, 1981.

Stephen F. Hefner, Sherman, Tex., David A. Haist, Thomas L. Schoaf, South Bend, Ind., for plaintiff.

David T. Ready, U. S. Atty., South Bend, Ind., Karen B. Brown, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## JUDGMENT ORDER AND OPINION

SHARP, District Judge.

The plaintiff manufactures horse and stock trailers, some of which contain living quarters. Its basic contention is that its product is exempt from the manufacturers excise tax imposed by 26 U.S.C. § 4061. The Internal Revenue Service (hereinafter "the Service"), on behalf of the United States, nevertheless imposed said tax on these products. Merhow produced an allegedly taxable trailer in 1975. For the calendar quarter from 6–1–75 to 9–30–75 plaintiff calculated and paid the excise tax amounting to $791.50. Subsequently, the plaintiff manufactured other similar trailers over the period of October 1975 to April 1977. The Service seeks to assess said excise tax and penalty in the amount of $3558.09, excluding interest, on trailers produced during that period.

The Internal Revenue Code Section in question labeled Manufacturers Excise Tax, Part I—Motor Vehicles, provides in pertinent part as follows:

§ 4061. Imposition of tax

(a) Trucks, buses, tractors, etc.—

(1) Tax imposed.—There is hereby imposed upon the following articles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof) sold by the manufacturer, producer, or importer a tax of 10 percent of the price for which so sold, except that on and after October 1, 1984, the rate shall be 5 percent—

Automobile truck chassis.

Automobile truck bodies.

Automobile bus chassis.

Automobile bus bodies.

Truck and bus trailer and semitrailer chassis.

Truck and bus trailer and semitrailer bodies.

Tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer.

A sale of an automobile truck, bus, truck, or bus trailer or semitrailer shall, for the purposes of this subsection, be considered to be a sale of a chassis and of a body enumerated in this subsection.

(2) Exclusion for light-duty trucks, etc. —The tax imposed by paragraph (1) shall not apply to a sale by the manufacturer, producer, or importer of the following articles suitable for use with a vehicle having a gross vehicle weight of 10,000 pounds or less (as determined under regulations prescribed by the Secretary)—

Automobile truck chassis.

Automobile truck bodies.

Automobile bus chassis.

Automobile bus bodies.

Truck trailer and semitrailer chassis and bodies, suitable for use with a trailer or semitrailer having a gross vehicle weight of 10,000 pounds or less (as so determined).

(b) Parts and accessories.—

(1) Except as provided in paragraph 2, there is hereby imposed upon parts and accessories (other than tires and inner tubes) for any of the articles enumerated in subsection (a)(1) sold by the manufacturer, produces, or importer a tax equivalent to 8 percent of the price for which so sold, except that on and after October 1, 1984, the rate shall be 5 percent.

(2) No tax shall be imposed under this subsection upon any part or accessory which is suitable for use (and ordinarily is used) on or in connection with, or as a component part of, any chassis or body for a passenger automobile, any chassis or body for a trailer or semi-trailer suitable for use in connection with a passenger automobile, or a house trailer. 26 U.S.C. § 4061.

§ 4063. Exemption

(a) Specified articles.—

(1) Camper coaches; bodies for self-propelled mobile homes.—The tax imposed under section 4061 shall not apply in the case of articles designed (A) to be mounted or placed on automobile trucks, automobile truck chassis, or automobile chassis, and (B) to be used primarily as living quarters or camping accommodations.

\* \* \* \* \* \*

(3) Housetrailers.—The tax imposed under section 4061(a) shall not apply in case of house trailers. 26 U.S.C. § 4063.

A critical document in this case is the report issued by the examining officer of the Service which outlined his reasons for denial of the claim. That report is labeled Excise Tax Audit Changes and states in part:

"The corporation's position at this time is that none of the selling price should be subject to tax under section 4063(a)(3) of the Code.... the service's current position ... provides that trailers having a gross vehicle weight of more than 10,000 pounds are subject to the ... tax imposed by section 4061(a)(1). The inclusion of living quarters on a trailer ... does not qualify the trailer or living quarters portion thereof, for the exemption provided by section 4063(a)(3) of the code... The corporation is not in agreement with the additional tax proposed by the agent. [The] Corporation's position ... [is that] the trailer is entirely exempt from tax under Section 4063(1) I.R.C."

The language of the statutes previously cited and the very structure of section 4061(a) require that both subsections of 4061(a) be considered in determining taxability. The analysis of the examining officer bears this out. He determined that the trailer was within the general language of section 4061(a)(1) and that because, in his opinion, it had a gross vehicle weight of more than 10,000 pounds, it was not within the exclusionary subsection 4061(a)(2). The examining officer then explicitly mentioned claims for exemption under both sections 4063(a)(1) and (3) and found them inapplicable. This suit resulted.

## JURISDICTION

Section 1346(a)(1) of Title 28 of the United States Code authorizes the district courts to entertain tax refund suits. Plaintiff has paid the tax assessed for the calendar quarter ending September 1975. It is the contention of the plaintiff that this one payment entitles it to contest the assessment of this tax on its products in subsequent quarters even though it has paid none of the tax assessed for those quarters. The defendant contends the taxpayer must pay at least the assessment with respect to one transaction for each quarter before suit can be brought in the district court.

At issue here is the full payment rule of *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958). In the first *Flora* decision the Supreme Court of the United States laid down the general rule that a taxpayer must pay the full amount of an income tax deficiency before he may challenge its correctness by an action for refund under 28 U.S.C. § 1346(a)(1). *Flora v. United States*, 357 U.S. 63, 75, 78 S.Ct. 1079, 1086, 2 L.Ed.2d 1165 (1958). It was in

its second *Flora* decision that the Supreme Court expanded its commentary on its holding. *Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). In the second *Flora* decision, the Supreme Court specifically discussed the application of 28 U.S.C. § 1346(a)(1) to suits involving excise taxes in two footnotes. The first footnote states in pertinent part as follows:

> Petitioner cites a number of cases in support of his argument that neither the bar nor the Government has ever assumed that full payment of the tax is a jurisdictional prerequisite to suit for recovery. The following factors rob these cases of the significance attributed to them by the petitioner:
>
> . . . .
>
> (b) A number of the cited cases involved excise taxes. The Government suggests—and we agree—that excise tax deficiencies may be divisible into a tax on each *transaction or event*, and therefore presents an entirely different problem with respect to the full-payment rule . . . *Id.*, at 171, n. 37, 80 S.Ct. at 644, n. 37. (emphasis supplied).

Footnote 38 states in pertinent part as follows:

> Petitioner points out that the Tax Court has no jurisdiction over excise tax cases . . . But this fact provides no policy support for his position, since, as we have noted, excise tax assessments may be divisible into a tax on each *transaction or event*, so that the full-payment rule would probably require no more than payment of a small amount. *Id.*, at 175, n. 38, 80 S.Ct., at 646, n. 38 (emphasis added).

The heart of what the Supreme Court stated with respect to excise taxes are the words "excise tax deficiencies may be divisible into a tax in each transaction or event." This concept of divisibility has been extrapolated in subsequent cases, notably *Steele v. United States*, 280 F.2d 89 (8th Cir. 1960), and *Spivak v. United States*, 370 F.2d 612 (2d Cir. 1967).

*Steele* involved a suit by officers of a corporation for a refund of payments on penalties administratively assessed against such officers for willful failure to pay over withholdings of income and social security taxes made by the corporation from the wages of its employees. The court held "the officers would be legally entitled to make payment of the amount of the penalty applicable to the withheld taxes of any *individual employee*, to make claim for refund, and to institute suit for recovery . . . ." *Id.*, at 91. (emphasis supplied).

Like *Steele*, the *Spivak* case involved penalties against responsible corporate officers for failure of the corporation to pay over income withholding and social security taxes. The appellate court in *Spivak* stated that "[t]he district court dismissed appellants' complaint because of failure to prove that their $50.00 and $60.00 payments were the amounts due the United States for one employee for each of the quarters involved as required." *Id.*, at 614. However, the statement by the appellate court of the holding of the district court is not complete. The district court in *Spivak v. United States*, 254 F.Supp. 517 (S.D.N.Y.1966), stated as follows:

> While plaintiffs have proved that they paid fifty and sixty dollars, respectively, they wholly failed to prove the amount of the tax due for one employee for *one quarter* involved herein. Id., at 522 (emphasis added).

In the case of *Boynton v. United States*, 566 F.2d 50 (9th Cir. 1977), the court stated that "[u]nder the doctrine of *Steele v. United States*, 280 F.2d 89 (8th Cir. 1960), a taxpayer assessed under section 6672 need only pay the divisible amount of the penalty assessment attributable to a *single individual's* withholding before instituting a refund action." *Id.*, at 52. (emphasis supplied). The *Boynton* court also stated that "[i]t has long been established that partial payment of assessed taxes or a proposed deficiency is insufficient to support jurisdiction in the district court of a refund suit under 28 U.S.C. § 1346. *Flora v. United States*, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960). *An exception to the Flora rule has developed with respect to divisible tax assess-*

ments." *Id.* Following *Flora,* several courts have followed the Supreme Court's comments with respect to excise taxes. *Bowers v. United States,* 423 F.2d 1207 (5th Cir. 1970), was an action to enjoin the collection of wagering taxes. In *Bowers,* the plaintiff *failed to pay any part* of the assessment at issue. As a result, the district court dismissed the case for want of jurisdiction. The court stated "Bowers could have paid the tax on a single wagering transaction and tested the validity of the assessment in a suit for refund of that amount." *Bowers, supra,* at 1208. See also, *Pizzarello v. United States,* 285 F.Supp. 147 (S.D.N.Y.1968), rev'd on other grounds, 408 F.2d 579 (2d Cir.), cert. den., 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969).

Clearly, there are exceptions to the full payment rule. Based on these exceptions plaintiff contends that so long as the excise tax is paid on one unit by the manufacturer then he may bring suit on all subsequent assessments. The defendant admits that the requirements of section 1346 have been satisfied for the quarter on which the tax was paid. However, the Service contends that since the plaintiff has not paid the assessed excise tax due for one transaction for any of the calendar quarters ended December 31, 1975 through March 31, 1977, inclusive, suit may not be maintained for these calendar quarters under section 1346. Further, the defendant directs the Court to section 7422(a) of the Internal Revenue Code which provides that no suit for the recovering of any tax may be maintained until a claim for a refund has been duly filed with the Internal Revenue Service. 26 U.S.C. § 7422.

■ The undisputed purpose of section 1346(a)(1) is to provide a jurisdictional basis for a suit for the refund of taxes as a method of challenging the correctness of their assessment. Here, the aim of the plaintiff is to obtain a refund of the money they paid. In any event, to come within the purview of 28 U.S.C. § 1346(a)(1) the action must be one to recover "taxes". And as a waiver of sovereign immunity section 1346

is to be strictly construed. *United States v. Michel,* 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598 (1931). If plaintiffs do not seek to recover monies paid as taxes, they point to no other statute which gives the district court jurisdiction. *Ancel v. United States,* 398 F.2d 456 (7th Cir. 1968). And the United States cannot be sued without its consent. Additionally, this Circuit has held that an action for a refund of taxes may be maintained in a federal district court only if a claim for refund has first been addressed to the Service. *England v. United States,* 261 F.2d 455 (7th Cir. 1958).

■ Therefore, since the assessed tax has not been paid on one taxable transaction in any of the calendar quarters ended December 31, 1975 through March 31, 1977, inclusive, a suit for a refund may not be maintained under 28 U.S.C. § 1346. Since this excise tax is divisible into a tax on each transaction or event to challenge such an assessment in federal district court the taxpayer must pay the tax on one transaction or event in each quarter and comply with the administrative refund procedure before he can maintain a suit for refund. Thus, this suit covers only the quarter from 6–1–75 to 9–30–75 in which the tax has been paid. However, the defendant has admitted that the doctrine of collateral estoppel would effect a separate suit involving the remaining quarters.

## FINDINGS OF FACT

The taxpayer/plaintiff, Merhow Industries, Inc., was represented at trial by K. H. Holdeman, the President thereof. Mr. Holdeman testified that each of the four subject trailers in question used two Series "A" Dexter axles, manufactured by Dexter Axle Company, a division of Phillips Industries, Inc. (Tr. 33, 48); that each of subject trailers was designed such that no less than 15% nor more than 25% of the gross vehicle weight of the trailer was transferred to the towing vehicle (Tr. 28); and that he engineered the subject trailers for the corporation. (Tr. 22–3, 47). He also testified that the amount of weight transferred to the towing vehicle is engineered to stay within

the excise tax limitations of 10,000 pounds maximum load. He further testified that the corporation maintained records of the gross vehicle weight ratings of all of the trailers manufactured by it (Tr. 47), and that each of the subject trailers in question was rated at 10,000 pounds by the corporation (Tr. 29), and that a label was affixed to each of said subject trailers showing this gross vehicle weight rating. (Tr. 47).

Edgar Terrell testified that the subject trailers in question are often used by the owners in off-road wilderness vacations and other uses off the road. (Tr. 41, 50, 78–80).

Accountant witness, Joseph I. Wiskotoni, testified that no part of the tax on the subject trailers was passed on to the respective consumers of the subject trailers, but that the tax was borne solely by the corporation, and was paid in order to get a resolution of the issues which are the subject matter of this suit. (Tr. 27–8, 68).

The witness, R. A. Chirako, is an engineer with Phillips Industries, Inc., in its subsidiary, Dexter Axle Company, and has been so employed in that capacity for a number of years, and has extensive experience in rating axles and motor vehicle parts. One of Mr. Chirako's duties with Dexter Axle is to judge and analyze the products manufactured by Dexter Axle in regard to the strength and ratings applied to those axles. He testified that he wrote the letter introduced in evidence as taxpayer/plaintiff's Exhibit "14", which stated the axle weight rating. (Tr. 57). He further testified that based upon reasonable engineering standards, the material used in making the axles known as Series "A" axles by Dexter Axle Company, and taking into consideration both off-road usage, and a safety factor of 4 (Tr. 58–9), that the Series "A" axles would have a reasonable gross axle weight rating of 3790 lbs. per axle. (Tr. 60). He further testified that, based upon reasonable accepted engineering standards, the use of a safety factor of 4 would be reasonable in rating motor vehicle parts, and, in fact, a greater safety factor of 5 or 6 might be appropriate, because of the stress and metal fatigue experiences by the materials in continued usage in motor vehicles. (Tr. 59).

Holdeman testified that the four subject trailers in question contain living quarters for human habitation. (Tr. 19). These units are basically self-contained units, including cooking facilities, kitchen appliances, sleeping and storage facilities, and restroom facilities, and contain their own fuel, water, and power sources required to sustain human life. (Tr. 19, 37, 52–5). That the subject trailers in question are custom designed and built, and that the major emphasis of a customer in the design of these vehicles is upon the amenities of the living quarters, rather than on the cargo areas. (Tr. 44). That the cargo area is primarily and generally designed for carrying horses, but is used for other purposes. The dividers used for carrying horses are capable of being easily removed and the owner can then carry snowmobiles or such other cargo as he may desire. (Tr. 20–1). That with regard to all of the subject trailers in question, and all models of this general design, the cost of the living quarters for human habitation comprises approximately 75% of the total price of the trailers, and cost of production. (Tr. 24–5, 36–7). That all of the trailers built by Merhow Industries, Inc., are designed and suitable to be pulled by a towing vehicle no larger than a one-ton pickup truck (Tr. 30, 37), which are themselves specifically non-taxable from taxation under § 4061, I.R.C.

The witness, Edgar Terrell, who is both an owner of a trailer similar to the subject trailers in question, and is a dealer of Merhow Industries, Inc., testified that the trailers are used for many purposes, but that the primary concern of a purchaser is the equipping and design of the living quarters, rather than the cargo quarters. (Tr. 75–80). That the price of the subject trailers in question can be allocated 75% to the living quarters and 25% to the cargo quarters (Tr. 73–4). That purchasers of such trailers would not spend the money on the trailers like the four subject trailers if it were not for their interest in the living quarters, because of the costs attributable thereto. (Tr. 82). That purchasers use the

trailers for carrying many varied cargoes, and in fact, he has known them to be used as a lake housing facilities. (Tr. 80–1). He further testified that he and his wife use their trailer approximately 30 weeks per year as their home, and he testified as to the manner of their use of his trailer which is similar to the four subject trailers in question. (Tr. 75–6). He further testified that he pulls his trailer with a one-ton "duallie" pickup truck. (Tr. 73).

None of the above facts were contested by the government in the trial of this cause as the defendant called no witnesses and the defendant produced no evidence that the ratings of any of the four trailers in question were unreasonable in light of the facts and circumstances involved.

## CONCLUSIONS OF LAW

■ In a tax refund suit the burden is on the taxpayer to prove by a preponderance of the evidence that its position is correct. *United States v. Janis*, 428 U.S. 433, 440–443, 96 S.Ct. 3021, 3025–3027, 49 L.Ed.2d 1046 (1976); *Liberty National Life Ins. Co. v. United States*, 600 F.2d 1106 (5th Cir. 1979). The taxpayer has the burden of proving not only that the Commissioner erred in his determination of tax liability but also to establish the correct amount of refund due. *Tunnell v. United States*, 512 F.2d 1192, 1199 (3d Cir.), *cert. den.*, 423 U.S. 893, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975); *Fed-Mart Corp. v. United States*, 572 F.2d 235 (9th Cir. 1978). Here the amount of tax paid, $791.50, is precisely the amount assessed by the Service which has not been contested and is therefore presumed correct.

The Internal Revenue regulation dealing with 26 U.S.C. § 4061 specifically provides that the maximum total weight shall be the gross vehicle weight rating of the article as manufactured as specified or established by the manufacturer of the completed article unless such rating is unreasonable in light of the facts and circumstances. Treas.Reg. 48.4061(a)–1(f)(3)(i). See Appendix A. Also Revenue Procedure 76–21 establishes a formula method for determining the gross

vehicle weight rating of a trailer for purposes of the manufacturer's excise tax imposed by section 4061. In addition to the formula that revenue procedure states that if a manufacturer can, . . . ., establish to the satisfaction of the Service a gross vehicle weight rating lower than that determined by the formula, such lower rating may be used. Rev.Pro. 76–21. See Appendix B.

■ The taxpayer's evidence was without contradiction, that the corporation maintains records in accordance with the law concerning its gross vehicle weight ratings on all trailers, and that the subject trailer was rated at 10,000 pounds. There was no evidence presented by the defendant to establish that the rating on the subject trailer in question is unreasonable in light of all the facts and circumstances—the test of the Internal Revenue Service's Regulations. Further evidence in the form of engineering data on the axles established that the subject trailers are equipped with axles rated at 3790 pounds each, and that the subject trailer was equipped with two such axles—making the total of the axle ratings on each of said subject trailers being less than 10,000 pounds. The Court is aware of the testimony that between 15 and 25 percent of the weight is borne by the towing vehicle. Mr. Holdeman further testified that this percentage of weight shifted to the towing vehicle is varied so as to keep the gross vehicle weight at 10,000 pounds or less. Thus, taxpayer/plaintiff has, without contradiction from the defendant, established that the subject trailers were rated at 10,000 pounds or less, and has further provided the Court with engineering data to support such rating. The government did not contest either the rating of the taxpayer/plaintiff or the engineering data furnished to the Court concerning the axles.

Therefore, the taxpayer has met its burden of proof and the Court must conclude, in light of the uncontradicted evidence, that the subject trailer is non-taxable under § 4061(a)(2) as having a gross vehicle weight of 10,000 pounds or less. The defendant is ordered to refund the tax paid.

Each party will bear its own costs. This shall constitute the necessary findings and conclusions under Fed.R.Civ.P. 52. Judgment is hereby entered for the plaintiff.

APPENDIX A

(b) *Regulations* :

(1) *Section 48.4061(a)–1(f)(1)* :

"*Exclusion of light-duty trucks, buses, and related articles from tax.* (1) *In general.* (i) No tax is imposed by Section 4061(a)(1) on the sale after December 10, 1971, of the following articles, if suitable for use with a vehicle having a gross vehicle weight of 10,000 pounds or less (determined under paragraph (f)(3) of this section):

(A) Automobile truck and bus chassis and bodies; and

(B) Truck trailer and semitrailer chassis and bodies suitable for use with a trailer or semitrailer having a gross vehicle weight of 10,000 pounds or less (as so determined).

(ii) For purposes of this part, a chassis or body is suitable for use with a vehicle having a gross vehicle weight of 10,000 pounds or less (hereafter referred to in this paragraph (f) as a "light-duty vehicle") if such chassis or body is commonly used with such a vehicle, or possesses actual, practical, commercial fitness for such use. A truck or bus chassis, sold after December 10, 1971, which is suitable for use with a light-duty vehicle, is not subject to the tax imposed by Section 4061(a)(1) regardless of the body actually mounted thereon. Similarly, a truck trailer or semitrailer chassis sold after such date, suitable for use with a trailer or semitrailer having a gross vehicle weight of 10,000 pounds or less, which trailer or semitrailer is suitable for use in connection with a light-duty towing vehicle, is not subject to such tax regardless of the body actually mounted thereon. A truck or bus body, sold after such date, which is suitable for use with a light-duty vehicle, is not subject to such tax even though it may also be suitable for use with (and is actually a component of) a vehicle having a gross vehicle weight in excess of 10,000 pounds.

Similarly, a truck trailer or semitrailer body sold after such date, suitable for use with a trailer or semitrailer having a gross vehicle weight of 10,000 pounds or less, which trailer or semitrailer is suitable for use with a light-duty towing vehicle, is not subject to such tax even though it may also be suitable for use with (and is actually a component of) a trailer or semitrailer having a gross vehicle weight of more than 10,000 pounds, or is used in connection with a vehicle having a gross vehicle weight of more than 10,000 pounds.

(iii) Where an exempt body is mounted on a taxable chassis, or a taxable body is mounted on an exempt chassis, the taxable chassis or taxable body, as the case may be, nevertheless remains subject to such tax, if the resulting vehicle is a highway vehicle as defined in paragraph (d) of this section."

(2) *Section 48.4061(a)–1(f)(3)(i)* :

"*Gross vehicle weight.* For purposes of paragraph (f)(1) of this section, gross vehicle weight means the maximum total weight of a loaded vehicle. Except as otherwise provided in this paragraph (f)(3), such maximum total weight shall be the gross vehicle weight rating of the article (as manufactured) *as specified or established by the manufacturer of the completed article, unless such rating is unreasonable in light of the facts and circumstances in a particular case.*

(ii) A manufacturer must specify or establish a weight rating for each chassis, body, or vehicle sold by him after September 22, 1971, if such article requires no additional manufacture other than (A) the addition of readily attachable articles, such as tire or rim assemblies or minor accessories, (B) the performance of minor finishing operations, such as painting, or (C) in the case of a chassis, the addition of a body. If an article is specially manufactured to the purchaser's specifications, such specifications may be used to establish the gross vehicle weight of the article.

(iii) A manufacturer shall maintain a record of the gross vehicle weight rating of each truck, bus, trailer, and semitrailer sold

by him and excluded from the tax imposed by Section 4061(a)(1) by reason of Section 4061(a)(2) and this paragraph (f). For this purpose, a record of the serial number of each such article shall be treated as a record of the gross vehicle weight rating of the article if such rating is indicated by the serial number.

(iv) If (A) the manufacturer's rating indicated in a label or identifying device affixed to an article, (B) the rating set forth in his sales invoice or warranty agreement, and (C) his advertised rating for that article (or two or more identical articles) are inconsistent, the highest of such ratings will be considered to be the manufacturer's gross vehicle weight rating specified or established for purposes of the tax imposed by Section 4061(a)(1).

(v) With respect to articles sold after January 31, 1972, the manufacturer's gross vehicle weight rating must take into account the strength of the chassis frame, the axle capacity and placement, and the spring, brake, rim and tire capacities. The component with the lowest weight rating ordinarily shall be considered determinative of the gross vehicle weight. If the capacity of any of the readily attachable components (springs, brakes, rims, or tires) would otherwise be determinative of a gross vehicle weight rating of 10,000 pounds or less, no readily attachable component will be taken into account in determining such rating unless the rating determined solely on the basis of the chassis frame or the total of the axle ratings is 12,000 pounds or less.

(vi) For purposes of paragraph (f)(3)(v) of this section, the term "total of the axle ratings" means the sum of the maximum load carrying capability (capacity and placement) of the axles (without regard to springs, brakes, rims, and tires) and, in the case of a trailer or semitrailer, the weight, if any, that is to be borne by a vehicle used in combination with the trailer or semitrailer for which gross vehicle weight is determined."
(emphasis added).

APPENDIX B

Rev.Proc. 76–21

SECTION 1. PURPOSE.

The purpose of this Revenue Procedure is to republish Rev.Proc. 75–41, 1975–2 C.B. 574, to reflect certain changes made therein. That Revenue Procedure establishes a method for determining the gross vehicle weight rating of a semitrailer for purposes of the manufacturers excise tax imposed by section 4061 of the Internal Revenue Code of 1954. This method is intended to apply where the gross vehicle weight of a semitrailer is determined on the basis of either the sum of the axle ratings or the readily attachable components.

The changes in Rev.Proc. 75–41 that are reflected in this Revenue Procedure consist of a correction of the regulation citation in the first sentence of Section 2.03, the substitution of the words "load bed" for "load" in the second paragraph of Section 3, and the insertion of an additional paragraph preceding the final paragraph of the Revenue Procedure.

SEC. 2. BACKGROUND.

.01 Section 4061(a)(1) of the Code imposes a 10 percent tax on the sale by the manufacturer, producer, or importer of certain enumerated articles including trailer and semitrailer bodies and chassis.

.02 Section 4061(a)(2) of the Code provides that the tax imposed by section 4061(a)(1) shall not apply to a sale by the manufacturer, producer, or importer of truck trailer and semitrailer chassis and bodies, suitable for use with a trailer or semitrailer having a gross vehicle weight of 10,000 pounds or less (as determined under regulations prescribed by the Secretary of the Treasury or his delegate). However, such a trailer or semitrailer must be suitable for use with a towing vehicle having a gross vehicle weight of 10,000 pounds or less.

.03 Section 142.1–1(d)(3) of the Temporary Excise Tax Regulations under the Revenue Act of 1971, provides that with respect to articles sold after January 31, 1972, the manufacturer's gross vehicle weight rating

must take into account the strength of the chassis frame, the axle capacity and placement, and the spring, brake, rim and tire capacities. The unit with the lowest weight rating ordinarily shall be considered determinative of the gross vehicle weight. If the capacity of any of the readily attachable components (springs, brakes, tires, or rims) would be otherwise determinative of a gross vehicle weight rating of 10,000 pounds or less, no readily attachable component will be taken into account in determining such rating unless the rating determined solely on the basis of the chassis frame or the total of the axle ratings is 12,000 pounds or less. For this purpose, this section of the regulations further provides that the term "total of the axle ratings" means the sum of the maximum load carrying capability of the axles (without regard to rims, tires, springs, and brakes) and, in the case of a trailer or semitrailer, the weight, if any, which is to be borne by a vehicle used in combination with the trailer or semitrailer for which gross vehicle weight is determined.

SEC. 3. CONCLUSION.

Upon consideration of data obtained from manufacturers in the industry, the Internal Revenue Service will, in the examination of returns with respect to semitrailers sold after January 31, 1972, accept a gross vehicle weight rating based on the sum of the axle ratings derived by the following formula:

Where $x$ is the distance from the trailer hitch to the center of the load bed, $y$ is the distance from the center of the load bed to the center of the axle(s) (for a tandem axle the center hanger), and $z$ is the distance from the trailer hitch to the center of the axle(s);

Then $y/z \times 100$ equals the percentage the weight borne by the towing vehicle is of the total of the axle ratings (or G.V.W.), and

$x/z \times 100$ equals the percentage the axle capacity is of the total of the axle ratings (or G.V.W.)

When the axle capacity is known, the total of the axle ratings (or G.V.W.) can be determined by dividing the axle capacity by the percentage it is of the total of the axle ratings (or G.V.W.)

If the total of the axle ratings of a semitrailer is 12,000 pounds or less and there is a readily attachable component that would be determinative of gross vehicle weight, the same formula for G.V.W. can be used by substituting the capacity rating of the component for the capacity rating of the axles.

For example, a tandem axle semitrailer has axles rated at 10,000 pound total capacity and wheels rated at 2,000 pounds each or 8,000 pounds for 4 wheels. It has the following dimensions:

$$x = 170 \text{ inches}$$
$$y = 30 \text{ inches}$$
$$z = 200 \text{ inches}$$

$$x/z \times 100 = 170/200 \times 100 = 85\%$$
$$y/z \times 100 = 30/200 \times 100 = 15\%$$

The axle capacity is 85 percent of the total of the axle ratings. Thus, the total of the axle ratings is determined by dividing the 10,000 pound axle capacity by 85 percent, which results in an 11,765 pound total of the axle ratings. If there are no readily attachable components which are determinative of gross vehicle weight, then the total of the axle ratings is the gross vehicle weight. However, since in the example here the total of the axle ratings is 12,000 pounds or less and there are readily attachable components, the capacities of such components must be considered in determining gross vehicle weight.

Substituting the wheel capacity for the axle capacity in the formula, dividing 8,000 pounds by 85 percent results in a 9,412 pound gross vehicle weight for the trailer.

*In lieu of the above formula if a manufacturer can, under the regulations, establish to the satisfaction of the Service a gross vehicle weight rating lower than that determined by using the formula, such lower rating may be used.*

With respect to semitrailers sold during the period September 23, 1971, through January 31, 1972, the Service will accept any reasonable gross vehicle weight rating that

a manufacturer establishes for its semitrailers.

Rev.Proc. 75–41 is superseded.

(emphasis added)