Felton D. DUNCAN, Plaintiff-Appellant,

v.

FIRST NATIONAL BANK OF CARTERS-VILLE, GEORGIA, and United States of America, Defendants-Appellees,

Lamar B. Hill, Defendant.

No. 77–1938.

United States Court of Appeals,
Fifth Circuit.

June 13, 1979.

Ben Lancaster, William E. Cetti, Cartersville, Ga., for plaintiff-appellant.

Frank D. (Tony) Smith, Jr., J. M. Neel, Jr., Cartersville, Ga., for First Nat. Bank of Cartersville.

Wm. L. Harper, U. S. Atty., Atlanta, Ga., M. Carr Ferguson, Asst. Atty. Gen., Richard W. Perkins, Atty., Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Section, F. Arnold Heller, Atty., Tax Div., Dept. of Justice, Washington, D. C., for the U. S.

Before MORGAN, FAY and RUBIN, Circuit Judges.

FAY, Circuit Judge:

This litigation between Felton D. Duncan, appellant-plaintiff, and the First National Bank of Cartersville and the United States of America, appellees-defendants, involves certain transfers of property between Duncan and Lamar B. Hill, which appellees argue were fraudulent transfers and therefore void. Duncan argues that he was entitled to a jury trial and that the district court erred in finding that the conveyances were fraudulent. Finding no merit to his argument, we affirm.

## I. FACTS

From January 1969 to February 1972, Lamar Hill was president of the First National Bank of Georgia during which time he embezzled approximately $4,700,000 from the bank. On June 2, 1972, assessments for unpaid federal income taxes were made against Hill for over $3,000,000 of which $3,621,511.04 remains outstanding. On June 6, 1972 and June 21, 1972, notices of tax liens were recorded in the Office of

the Clerk of the Superior Court, Bartow County, Georgia. Notice of the levy was served upon Felton D. Duncan on June 8, 1972, demanding that he pay over all property and money of Lamar B. Hill in his possession to apply towards satisfaction of Hill's tax liabilities.

On June 30, 1975, in *First National Bank of Cartersville v. Hill, Civil No. 2422* (N.D. Ga.) a judgment was entered in favor of the United States against Hill for the unpaid assessment in the amount of $4,052,842.60 plus interest from the day of judgment. On the same day, judgment was entered for the First National Bank of Cartersville for $4,601,546.33 for the embezzled funds.

The parties stipulated that around 1972 Hill transferred to Duncan 157 shares of First National Bank of Cartersville common stock owned by Hill. It was further stipulated that Hill was either insolvent at the time of the transfer or was rendered insolvent by the transfer. The dates of the transfers were left blank on the stock certificates as were the other spaces provided on the reverse side of the stock certificates.

At various times during 1972 Hill transferred to Duncan shares of stock and interests in real property. The district court found that at the time of these transfers Hill was insolvent or thereby rendered insolvent and that the United States was a creditor of Hill at the time of the transfers.

On June 1, 1969, a demand note for $30,000 was given Duncan by Lamar Hill for the purchase of a one-third interest in Duncan Credit, Inc. $3,000 was paid on the principal on April 30, 1970, and $2,000 was paid on the principal on December 30, 1971.

Three more demand notes in varying amounts were given to Duncan by Lamar Hill. A note for $74,115.77 is dated June 29, 1970. A note for $40,000 is dated March 5, 1970. Finally, a note for $47,500 is dated October 1, 1971. None of the four demand notes given Duncan by Hill was witnessed.

A final note payable in six months for $2,000 is dated May 10, 1972. This note, like the demand notes, was not witnessed. According to Duncan, this note represented part of the purchase price of the one-third interest in Duncan Credit, Inc.

Duncan's testimony indicated that the various stock transfers were collateral to secure indebtedness by Hill evidenced by the promissory notes; he testified that he made loans to Hill and never recorded the transactions but rather kept a running tab in his head until a figure built up to a certain amount, at which time he would then ask Hill for a note. These loans were never made by check but rather were made in cash.

Hill stated in his affidavit that he was indebted to Duncan as to a fluctuating margin account with Bache & Co. in Atlanta, Georgia, and that some of the transfers made were related to this indebtedness. Lamar Hill alleged that the account was jointly owned by Hill and Duncan. Schedule D of the 1969, 1970, and 1971 United States income tax returns of Felton Duncan and his wife show that Duncan reported the entire gains and losses of transactions in the Bache & Co. account GE–00263. The district court found that it was most unlikely that if the margin account were actually jointly owned, Duncan would have been willing to absorb the entire responsibility for the taxes on the transactions involved.

Duncan testified that he and Lamar Hill were "closer than brothers." The district court acknowledged that when dealing with close personal friends or relatives, one is unlikely to require the same formalities one would require in an ordinary business transaction. Duncan further testified that he wouldn't "even loan my brother any [money] without a note." The district court was unable to accept the fact that Duncan would have allowed Hill to borrow thousands of dollars with no record of the transaction other than the running tab Duncan kept in his head.

The financial statement prepared by Felton Duncan stating his financial condition as of December 31, 1972, gave no indication that substantial sums were owed him by Hill or that he was holding stock as collateral.

In September, 1972 Duncan brought a suit in the Superior Court of Bartow County, Georgia to quiet title to the properties conveyed to him by Hill. Duncan named the First National Bank of Cartersville and the United States of America as defendants. The United States and the First National Bank petitioned for removal to the federal district court in October, 1972. On March 25, 1975, the government filed an amended answer and a counterclaim seeking to set aside the conveyances by Hill to Duncan as fraudulent and seeking the foreclosure to the government's tax liens. The First National Bank also counterclaimed for the assets and proceeds involved in the litigation.

In April, 1975, Duncan requested a jury trial in the federal district court relying on Fed.R.Civ.P. 38, 39 and 81(c) and relying also on Ga.Code Title 81A §§ 138, 139 and 140 arguing that although he had not previously requested a jury trial in either the state or federal court, the above cited rules gave him the right, upon removal of the action, to a jury trial. The district judge tried the case without a jury. The district court found that the conveyances were fraudulent transfers under Ga.Code Title 28 § 201. The federal district court did not recognize any debt owed by Hill to Duncan except a $25,000 balance remaining on the sale of a one-third interest in Duncan Credit, Inc. This appeal followed.

## II. RIGHT TO A JURY TRIAL

■ Although Duncan did not request a jury trial at the state level before the trial was removed to federal district court, he argues that he was entitled to a jury trial under Fed.R.Civ.P. 81(c). This Rule states in part that if at the time of removal all necessary pleadings have been served, a party entitled to trial by jury under Rule 38 shall be accorded it, if his demand is served within ten days after service on him of the notice of the filing of petition. Particularly, Rule 81(c) states in relevant part:

> A party who, prior to removal, has made an express demand for trial by jury in accordance with state law, need not make a demand after removal. If state law applicable in the court from which the case is removed does not require the parties to make express demands in order to claim trial by jury, they need not make demands after removal unless the court directs that they do so within a specified time if they desire to claim trial by jury. The court may make this direction on its own motion and shall do so as a matter of course at the request of any party. The failure of a party to make demand as directed constitutes a waiver by him of trial by jury.

Appellant argues that Georgia law entitled him to a trial by jury without demand.[1] The provisions of Georgia's code cited by appellant cannot be interpreted to mean that a person has a right to a trial by jury in all cases. It is clear that under Georgia law there is no constitutional right to a trial by jury in equity cases. *Williams v. Overstreet*, 230 Ga. 112, 114, 195 S.E.2d 906, 909 (1973). The provision in the Georgia Constitution stating that a trial by jury shall remain inviolate simply means that this right will not be taken away in cases where it existed when the instrument was adopted in 1798 and not that there must be a trial by jury in every case. 195 S.E.2d at 909. Since there is no constitutional right to a trial by jury in equitable proceedings, such a right can exist only in instances where it is conferred by statute.

1. Appellant cites Ga.Code Title 81A §§ 138 and 139 which read:

> Jury trial of right
> The right of trial by jury as declared by the Constitution of the State or as given by a statute of State shall be preserved to the parties inviolate.
> Ga.Code Title 81A § 138.
> Trial by jury or by the court
> The parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, may consent to trial by the court sitting without a jury. In all actions not triable of right by a jury, or where jury trial has been expressly waived, the court may nevertheless order a trial with a jury whose verdict will have the same effect as if trial by jury had been a matter of right or had not been waived.
> Ga.Code Title 81A § 139.

Under Ga.Code Title 37, § 1416 a party may be entitled to a trial by jury in a quiet title suit *upon the party's demand or upon request of a master.*[2] However, even assuming that appellant's suit fell under § 1416, it is clear that appellant did not make such a demand at the state level. Rather, appellant would have us believe that a right to a jury trial in his case existed without demand under Title 81A § 138. Such an interpretation of § 138 is too strained. Even though Duncan's complaint filed in the state court specifically states that Duncan sought to quiet title, appellant now contends that he was not really seeking to quiet title and that such a suit was improper.[3] If a suit to quiet title was indeed improper and if no jurisdiction existed in the state court, the federal court, nevertheless, had jurisdiction of the government's counterclaim for equitable relief.[4] In our recent *en banc* decision of *United States v. McMahan,* 569 F.2d 889 (5th Cir. 1978) we stated that when a suit involves the issue of a person's liability for taxes and penalties imposed by the Internal Revenue Service, that person is entitled to a trial by jury even though there may be other issues in the case which are of an equitable nature. But *McMahan* involved a situation where both the legal issue of tax liability and penalties, and equitable claims were asserted. The clear implication of the language in *McMahan,* however, is that if a case involves *only* equitable issues, a trial by jury is not guaranteed by the Seventh Amendment of the Constitution. In *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) the Supreme Court quoted with approval this Court's opinion in *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.,* 294 F.2d 486 (5th Cir. 1961):

"It is therefore immaterial that the case at bar contains a stronger basis for equitable relief than was present in *Beacon*

2. Ga.Code Title 37 § 1416 reads as follows:
   Upon reasonable notice to the parties, after proof of serving notice as required by the provisions of this law [§§ 37–1411 thru 37–1423] has been filed, and after the appointment of the disinterested person as representative where required, the special master shall have complete jurisdiction within the scope of the pleadings to ascertain and determine the validity, nature or extent of petitioner's title and all other interests in said land, or any part thereof, which may be adverse to the title claimed by the petitioner or to remove any particular cloud or clouds upon the title to said land and to make a report of his findings to the judge of said court: Provided, however, any party to this proceeding may demand a trial by a jury of any question of facts: Provided, further, that the master of his own initiative may require a trial by a jury of any question of fact.

3. During oral argument before this Court, appellant raised the question of lack of jurisdiction. Duncan argued that the state court lacked jurisdiction of the suit to quiet title since such an action was improper after having been served with a notice of levy by the United States to remit payment of money or property in his possession not belonging to Hill. Duncan argues that the proper procedure would have been to bring an action in federal district court for wrongful levy under 26 U.S.C. § 7426(a)(1). Appellant further argues that because the state court lacked jurisdiction, upon removal of the action the federal district court also lacked jurisdiction.

Assuming arguendo some merit in this late semantical scrambling, the government's counterclaim seeking to set aside the conveyances as fraudulent and to foreclose the tax liens gave the federal district court jurisdiction since there was an independent basis for jurisdiction of these counterclaims. Once such an independent basis exists, jurisdiction is not lost even if there was a want of jurisdiction in the case as originally brought:
   Once an issue with independent subject matter jurisdiction is before the Court and jurisdiction over the parties has been perfected, it must be allowed to proceed to a conclusion pursuant to the rules of civil procedure like any other routine federal claim. This principle has been recognized in relation to permissive counterclaims, where the issue more usually arises because permissive counterclaims require independent jurisdiction . . .
   Where jurisdiction is merely ancillary, the Court has discretion to dismiss if the original claim supporting it is disposed of. But where, as here, jurisdiction is independent, the counterclaim must be allowed to proceed without regard to the fate of the original claim, and it was error to dismiss it out of hand. There is no justification for putting the plaintiff in a counterclaim to the expense, effort and risk of refiling his claim and attempting to re-establish personal jurisdiction over the opposing party.
*National Research Bureau, Inc. v. Bartholomew,* 482 F.2d 386, 388–389 (3rd Cir. 1973).

4. *See* n. 3, *supra.*

*Theatres* [*Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988]. It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. *As long as any legal cause is involved the jury rights it creates control.* This is the teaching of *Beacon Theatres,* as we construe it." 369 U.S. at 473 n.8, 82 S.Ct. at 897, *quoting* 294 F.2d at 491 (emphasis added).

■ Duncan may have had a right to a jury trial for his quiet title suit at the state level if he requested it. *See* Ga.Code Title 37 § 1416. However, since such a request was not made, Fed.R.Civ.P. 81(c) does not give appellant the right to a jury trial. Under Rule 81(c), appellant was required to file a demand for jury trial within ten days after the petition for removal was filed because under state law a demand was required and had not been made prior to removal. Furthermore, if the quiet title suit was improperly brought and the state court had no jurisdiction, it is clear that the federal district court had jurisdiction of the government's counterclaim to set aside the fraudulent conveyance and foreclose the government's tax liens. The government's counterclaim is also equitable in nature and Duncan was therefore not entitled to a trial by jury. We are convinced that whether or not the quiet title suit was proper, the federal district court had jurisdiction and, in any event, appellant was not entitled to a jury trial under Fed.R.Civ.P. 81(c) or under *McMahan.*

## III. FRAUDULENT CONVEYANCES

■■ Appellant argues that there was insufficient evidence from which the federal district court could have concluded that the conveyances from Hill to Duncan were fraudulent. Georgia law provides creditors with the right to set aside fraudulent transfers. *See* Ga.Code Title 28 § 201(2) and (3).[5] There are certain "badges of fraud" which indicate that transfers were fraudulent. *See United States v. Hickox,* 356 F.2d 969 (5th Cir. 1966). The federal district court in the case before us found that these badges of fraud included the fact that the tax liability had occurred at the time of the transfers; that the parties to the transfers were, according to Duncan's testimony, "closer than brothers"; and that the transferor was insolvent at the time of the transfers. There was also strong indicia of fraud since appellant knew by February or March of 1972 that the transferor had embezzled funds from the First National Bank and that on June 8, 1972 notice of the federal tax lien was served on Duncan. All of the transfers of assets were made either around the time Duncan learned of the embezzlement or sometime thereafter. One stock transfer was made on or after the date that notice of the federal tax lien was served on Duncan. "The evidence before the district court was sufficient to make out a strong prima facie case of fraud, and the burden of showing good faith was shifted to the parties to such conveyances." 356 F.2d at 974 *citing* 37 C.J.S. Fraudulent Conveyances § 382, p. 1211. The federal district court found that despite the close relationship between the transferor and Duncan, the failure to keep adequate records of the loans was not explained to the satisfaction of the court. Furthermore, the various notes supposedly documenting these loans were not witnessed and the district court found the notes were of dubious value in proving the existence of prior indebtedness by Duncan.

There was ample evidence from which the district court could have concluded that

5. Ga.Code Title 28 § 201(2) and (3) read as follows:

Enumeration of void acts.—The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz:

2. Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid.

3. Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance.

the transfers to Duncan were fraudulent under Ga.Code 28 § 201(2) and (3).

### IV. CONCLUSION

For the above mentioned reasons, the judgment of the federal district court is AFFIRMED.