Mike GUSTIN, Plaintiff–Appellant

v.

UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant–Appellee.

No. 88–1370.

United States Court of Appeals, Fifth Circuit.

July 5, 1989.

Donald W. Hicks, Sr., Dallas, Tex., for plaintiff-appellant.

Stuart E. Horwich, Gary R. Allen, Chief, Appellate Section, Tax Div., Dept. of Justice, William S. Rose, Jr., Asst. Atty. Gen., and Jonathan S. Cohen, Washington, D.C., for defendant-appellee.

Before REAVLEY and POLITZ, Circuit Judges, and HUNTER *, District Judge.

REAVLEY, Circuit Judge:

The taxpayer, a former corporate officer, brought this action for a refund of employee withholding taxes owed by the corporation and assessed against him individually. The government counterclaimed for collection of the outstanding taxes. The district court entered judgment in favor of the government. Except in one respect, we reverse.

### I. Background

There are two closely associated corporations in this case. Western Oil & Mineral Co. (Western) was an energy exploration and development company headquartered in Snowmass, Colorado, and was owned and operated by Bruce Miller, its president, and Gerald Sawall, its chief financial officer. Prior to September of 1981, Western owned a drilling operation in Eastland, Tex-

* District Judge of the Western District of Louisi-
ana, sitting by designation.

as. During the third quarter of 1981, however, Western incorporated its Eastland drilling operation as a wholly-owned subsidiary, called Great Western Natural Resources, Inc. (Great Western). Western continued to exercise substantial control over Great Western, although it did not undertake to manage the day-to-day drilling activities. Western retained virtually complete financial control over Great Western, handling the accounting, payroll, and taxes for the subsidiary out of the Colorado office. Neither Western nor Great Western paid to the United States the income taxes withheld for the employees in Eastland for the third quarter of 1981 or the fourth quarter of 1981. The Internal Revenue Service has assessed against Great Western $29,738.42 for the third quarter taxes and $31,210.30 for the fourth quarter taxes, totaling $60,948.72 (excluding penalties and interest). Both corporations are now defunct, and both Miller and Sawall are apparently beyond the reach of the Internal Revenue Service.

The plaintiff, Mike Gustin, was hired as a consultant in September of 1981 to report on the Eastland, Texas drilling operations. In October 1981, Gustin was made the president of Great Western. Gustin's authority as president of Great Western included the following: day-to-day management of the drilling operations; the authority to fire employees, but only limited authority to hire them; the authority to negotiate contracts and pay creditors for supplies and services necessary to maintain the company's oil rigs; the authority to sign checks for under $2,500.00 on Great Western's bank account at the Eastland National Bank, and to sign checks for more than $2,500.00 with Sawall's express approval; and the authority to sign and distribute payroll checks to Great Western's employees. Gustin had no ownership interest in the company. He had no control or access to the company's books and financial records, and he had no responsibility for calculating or paying the company's taxes.

In mid-November of 1981, Great Western received a notice from the Internal Revenue Service that its third quarter employee withholding taxes were delinquent. Gustin immediately telephoned Sawall in Colorado; and Sawall told him not to worry about it, that all the taxes were handled out of the Colorado office and to mail the notice to Sawall in Colorado. Two weeks later, Great Western received a second notice for the overdue taxes. Gustin again called Sawall, who told him that the taxes were none of his business and that the taxes would be taken care of. Gustin then called the local Internal Revenue Service office and was informed that he might be held liable for the delinquent taxes. The next week Gustin met with an Internal Revenue Service agent in Abilene, Texas to discuss his personal liability. Gustin then telephoned Sawall again, who assured him that the taxes had been paid. Not satisfied, Gustin arranged for Miller and Sawall to meet with Internal Revenue Service agents at the offices of Great Western in early December. Gustin was not allowed to attend this meeting, but he was informed afterward that the parties had reached an agreement and that the taxes would be paid immediately. After the meeting, Great Western received no further delinquency notices from the Internal Revenue Service. In late January, 1982, Gustin resigned from Great Western. Before he left, however, Gustin signed a number of papers for the corporation, including two blank form 941 tax returns.

On August 22, 1983, Gustin was assessed a timely 100 percent penalty for all the payroll taxes due for both the third and fourth quarters of 1981. Gustin then paid to the United States an amount equal to the withholding taxes owed for one employee for each quarter. Gustin paid the United States by two separate checks. Gustin filed two separate form 843 claims for refunds. Gustin then entered negotiations with an Internal Revenue Service field agent regarding the taxes for both quarters. The Internal Revenue Service denied Gustin's refund claim apparently for both quarters, but ceased collection activities pending the filing of this law suit. Gustin then sued in district court for a refund, and the United States counterclaimed to recover the balance of the assessments levied

against Gustin. After the case was filed, the government's attorneys noticed that both of the refund forms filed by Gustin had the same dates on them, the dates for the fourth quarter of 1981; and the government moved to dismiss. After the trial, the district court dismissed Gustin's refund action for the third quarter of 1981 on the basis of subject matter jurisdiction. The district court found against Gustin on the merits on his refund claim for the fourth quarter of 1981, and entered judgment for the government on the government's counterclaims for both quarters.

## II. Third Quarter Taxes

### A. Jurisdiction of Taxpayer's Claim For Refund

 Subject matter jurisdiction of the taxpayer's refund claims is based on 28 U.S.C. § 1346(a)(1), which provides that district courts shall have original jurisdiction of any civil action against the United States for the recovery of any Internal Revenue tax alleged to have been erroneously or illegally assessed or collected. That jurisdiction is explicitly limited, however, by 26 U.S.C. § 7422(a), which prohibits any suit or proceeding in any court for a refund of taxes prior to the filing of a claim for a refund with the Internal Revenue Service. Failure to file a claim for a refund deprives the court of subject matter jurisdiction. *Zernial v. United States*, 714 F.2d 431, 434 (5th Cir.1983). The form 843 which Gustin filed for the third quarter of 1981 did not have the correct date on the form; therefore, no formal claim for a refund for the taxes assessed for the third quarter was filed. Noting that Internal Revenue Service agents had actual knowledge of his refund claim for the third quarter, Gustin argues that the refund claim he filed constituted informal notice, the typographical error notwithstanding. An informal claim for a refund is valid under § 7422. *See United States v. Kales*, 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132 (1941); *Bonwit Teller & Co. v. United States*, 283 U.S. 258, 264, 51 S.Ct. 395, 397, 75 L.Ed. 1018 (1931); *Missouri Pacific R.R. Co. v. United States*, 214 Ct.Cl. 623, 558 F.2d 596, 598 (1977). An informal claim must have a

written component. *Yuen v. United States*, 825 F.2d 244, 245 (9th Cir.1987); *Furst v. United States*, 230 Ct.Cl. 375, 678 F.2d 147, 151 (1982). An oral claim, even if it gives actual notice to an Internal Revenue Service employee that a refund is being filed, is not valid. *Disabled Am. Veterans v. United States*, 227 Ct.Cl. 474, 650 F.2d 1178, 1180 (1981). Gustin does not rely on his oral discussions with the Internal Revenue Service, but claims that the form 843 that he filed for the third quarter, but with the incorrect date, was itself informal written notice.

An informal written claim is sufficient if it puts the Commissioner of Internal Revenue on notice that the taxpayer believes an erroneous tax has been assessed and desires a refund for certain years. *Missouri Pacific R.R. Co.*, 558 F.2d at 598–99; *Barenfeld v. United States*, 194 Ct.Cl. 903, 442 F.2d 371, 374 (1971); *Newton v. United States*, 143 Ct.Cl. 293, 163 F.Supp. 614, 618–19 (1958). The rationale behind the requirement for a written claim is that, because many different people may work on a particular case, the fact that a refund has been claimed must be ascertainable from the file. *Furst*, 678 F.2d at 151; *Disabled Am. Veterans*, 650 F.2d at 1180. Therefore, the Internal Revenue Service need only take a written claim for a refund at face value. *See Alabama By–Products Corp. v. Patterson*, 258 F.2d 892, 900 (5th Cir.1958), *cert. denied*, 358 U.S. 930, 79 S.Ct. 318, 3 L.Ed.2d 303 (1959). It is not sufficient that the Internal Revenue Service has information somewhere in its possession from which it might deduce that the taxpayer is entitled to a refund, nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer. *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct.Cl. 106, 318 F.2d 915, 920 (1963).

Nevertheless, there are no hard and fast rules for evaluating the sufficiency of an informal claim, and each case must be decided on its own particular set of facts "with a view towards determining whether under those facts the Commissioner knew,

or should have known, that a claim was being made." *Newton*, 163 F.Supp. at 619. "[T]he writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and content. The focus is on the claim as a whole, not merely the written component." *American Radiator*, 318 F.2d at 920. The written component alone need not provide the entire framework for the informal refund claim. *Furst*, 678 F.2d at 151. Rather, the informal claim must be read "in the light of the peculiar circumstances then well known to the Commissioner...." *Kales*, 314 U.S. at 194, 62 S.Ct. at 218. Thus, when the written component of the informal claim, such as notations in the taxpayer's tax return, supply "enough of an underpinning," the taxpayer may rely on the detailed knowledge of the Internal Revenue Service agent investigating the claim. *American Radiator*, 318 F.2d at 920–21; *see also Night Hawk Leasing Co. v. United States*, 84 Ct.Cl. 596, 18 F.Supp. 938, 941–42 (1937) (finding a protest scribbled on the back of the check paying the tax a sufficient informal claim). The Supreme Court has held that when the Internal Revenue Service accepts a letter of protest as a claim for refund and treats the letter as a refund claim in correspondence and in hearings, the Court will be bound by the administrative construction of the writing. *Kales*, 314 U.S. at 196–97, 62 S.Ct. at 219. Similarly, the Court of Claims found an informal claim sufficient when the taxpayer sent a written protest to his 1945 and 1946 taxes noting that he had filed suit for a refund on the same grounds for his 1944 taxes, the Internal Revenue Service agreed to abate enforcement of the 1945 and 1946 taxes pending the outcome of the refund case, and a memo in the administrative file noted that agreement. *Newton*, 163 F.Supp. at 619.

In this case, the taxpayer owed taxes for two quarters of 1981; he submitted two separate refund forms for those taxes; he paid amounts sufficient to challenge the assessments for both quarters; Internal Revenue Service agents had actual knowledge that a refund for both quarters was being sought; and the Internal Revenue Service apparently denied the refund for both quarters and agreed to abate enforcement on both quarters pending the taxpayer's suit for a refund for both quarters. Nevertheless, the government introduced the testimony of an Internal Revenue Service agent who had reviewed the administrative file in this case and concluded that it was not ascertainable from the file that a refund was being sought for the third quarter taxes. While it is tempting to assume that there must have been something in the administrative file to indicate an administrative construction of the taxpayer's refund claim as applying to his third quarter taxes, nothing from the administrative file was made a part of the record in this case, and the taxpayer did not introduce any testimony that would rebut the government's claim. We must therefore hold that Gustin did not file a valid informal claim for his third quarter taxes. The district court had no jurisdiction to consider Gustin's claim for a refund for the third quarter.

## B. The Government's Counterclaim

That holding does not end the matter, however, because the government counterclaimed for the balance of the unpaid third quarter taxes. This counterclaim raised precisely the same issues as the claim for refund, and the district court in fact entered judgment for the government on the counterclaim, although the district court erroneously failed to consider the taxpayer's defenses to the government's counterclaim. The counterclaim for unpaid taxes was not derivative of the refund claim but was based on an independent jurisdictional ground. *See* 26 U.S.C. § 7402(a); 28 U.S.C. § 1340. Even if the district court had no subject matter jurisdiction over the original complaint, it could and must resolve the issues raised by the complaint when those issues are presented by a counterclaim resting on an independent jurisdictional basis. *See Duncan v. First Nat'l Bank of Cartersville*, 597 F.2d 51, 55 (5th Cir.1979); *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 335

(5th Cir.1978); *Riddell v. National Democratic Party*, 508 F.2d 770, 775 (5th Cir. 1975); *National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 388–89 (3d Cir.1973); *Haberman v. Equitable Life Assurance Society*, 224 F.2d 401, 409 (5th Cir.1955), *cert. denied*, 350 U.S. 948, 76 S.Ct. 322, 100 L.Ed. 826 (1956); 6 Wright & Miller, *Federal Practice and Procedure* § 1414, at 80 & n. 87 (1971); 3 *Moore's Federal Practice* § 13.15[1], at 13–99, 13–100 (2d ed. 1988). Thus the district court properly retained jurisdiction over the government's counterclaim for the third quarter taxes but erred in refusing to consider the merits of the "defenses" to the government's counterclaim raised by Gustin's refund claim. On remand the district court has jurisdiction to fully consider the issue of Gustin's liability for the third quarter taxes, but the district court does not have the power to order the United States to refund any of the taxes that Gustin has already paid toward the third quarter assessment.

The Ninth Circuit has held in a case in which the taxpayer did not pay the requisite minimum amount of assessed taxes before suing for a refund that the district court must dismiss the taxpayer's refund suit and must also dismiss the government's counterclaim. *Boynton v. United States*, 566 F.2d 50, 52 (9th Cir.1977). We do not find the rule stated in *Boynton* to be dispositive of this case. *Boynton* created a special exception to the general rule that the district court may retain jurisdiction over a counterclaim with an independent jurisdictional basis after dismissing the complaint for no subject matter jurisdiction. The Ninth Circuit gave the following reasons for this departure from the general rule: failure to dismiss the government's counterclaim gives the taxpayer the initiative as to timing of the litigation and choice of forum;[1] the procedural posture of a counterclaim gives tactical advantages to the taxpayer, such as transferring the burden of proof;[2] retaining jurisdiction over the same issues raised by the refund suit "smacks odiously of a collusive attempt by the parties to confer subject matter jurisdiction by consent";[3] and retaining jurisdic-

---

1. 566 F.2d at 54. This reasoning incorrectly assumes that the government's counterclaim is compulsory. It is not. *See* 26 U.S.C. § 7422(e); *Flora v. United States*, 362 U.S. 145, 166, 80 S.Ct. 630, 641, 4 L.Ed.2d 623 (1960); *Pfeiffer Co. v. United States*, 518 F.2d 124, 128–29 (8th Cir. 1975). The strictures of Fed.R.Civ.P. 13 simply do not apply to counterclaims for delinquent taxes. *Pfeiffer Co.*, 518 F.2d at 130. If the timing and forum are not to the government's liking, the government need not bring the counterclaim. Furthermore, if the government does not wish to proceed with suit on the counterclaim alone after dismissal of the suit for a refund, the government may move for a voluntary dismissal under Fed.R.Civ.P. 41. The rule in *Boynton* would require the district court to dismiss the government's counterclaim and force the government to refile the same suit in the same court immediately thereafter. *Boynton* argues that this "minor inconvenience is an insignificant cost to be incurred in obtaining full compliance with both the spirit and letter of the tax laws." 566 F.2d at 56 n. 12. Given the procedural protections already afforded the United States in tax cases, however, this "minor inconvenience" is merely a meaningless burden on the government.

2. 566 F.2d at 54. The Ninth Circuit is simply incorrect. When the government counterclaims for delinquent taxes, the taxpayer has the burden of proof. 26 U.S.C. § 7422(e); *Liddon v.* *United States*, 448 F.2d 509, 513–14 (5th Cir. 1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). The burden of proof would not switch back to the government upon dismissal of the complaint for lack of subject matter jurisdiction.

3. 566 F.2d at 54 n. 7. We must disagree with that conclusion, however, because Congress has chosen to give the United States the ability to bring actions for delinquent taxes either directly or as counterclaims; consent has nothing to do with the jurisdiction of the district court. Moreover, there is nothing "odious" about jurisdiction by consent in this case. Section 7422(a) requires only that a taxpayer give written notice for the tax *year;* Gustin complied with that requirement by giving notice for the fourth quarter. *See Missouri Pacific R.R. Co.*, 558 F.2d at 598; *American Radiator*, 318 F.2d at 920. The requirement that a refund be filed for each quarter of the tax year for illegally assessed employee withholding taxes is found in the Treasury Regulations, not in the statute. *See* 26 C.F.R. § 301.6402–2(d) (1988). The United States may certainly waive the requirements of the Treasury Regulations. *See Angelus Milling Co. v. Commissioner of Internal Revenue*, 325 U.S. 293, 297, 65 S.Ct. 1162, 1164–65, 89 L.Ed. 1619 (1945); *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 273, 51 S.Ct. 376, 378, 75 L.Ed. 1025 (1931).

tion over the counterclaim when the taxpayer has not paid any taxes would vitiate the "pay now, sue later" rule, a "keystone factor in the tax litigation system."[4] We do not follow *Boynton*. We do not see this case as a proper opportunity to carve out an exception to a jurisdictional rule which is well settled in the Fifth Circuit. Furthermore, we are constrained to follow the precedent of this circuit applying the general rule in tax cases. In *Duncan v. First Nat'l Bank of Cartersville*, a land owner brought suit against the United States in state court to quiet title after the Internal Revenue Service had placed a tax lien on his property. The government removed the case to federal district court and counterclaimed for foreclosure on the tax liens. On appeal, the land owner argued that the district court should have dismissed the entire case for lack of subject matter jurisdiction because the state court had no jurisdiction to hear a tax case and that therefore the district court had no removal jurisdiction. We held that the district court had properly proceeded to judgment, resolving all the issues raised in the case, because the government's counterclaim had the same independent jurisdictional basis relied on in this case. *See* 597 F.2d at 55 & n. 3. We hold, therefore, that the district court did have subject matter jurisdiction over the issue of whether Gustin was liable for the third quarter taxes. Because the district court did not consider third quarter liability on the merits, we remand for factual findings.

### III. Fourth Quarter Taxes

The district court did reach the question of fourth quarter liability on the merits. Employers are required to withhold income tax from employees' payroll checks. 26 U.S.C. § 3402. The withheld funds are then held in trust by the employer for the United States. 26 U.S.C. § 7501(a). If the trust funds are not paid over to the United States, 26 U.S.C. § 6672(a) imposes a 100 percent penalty for the withheld taxes on any responsible person who willfully failed to pay over the taxes. *See Wood v. United States*, 808 F.2d 411, 414–15 (5th Cir.1987); *see also Slodov v. United States*, 436 U.S. 238, 254, 98 S.Ct. 1778, 1788, 56 L.Ed.2d 251 (1978) (§ 6672 does not impose liability without personal fault). As to the fourth quarter taxes, the district court found that Gustin was a responsible person under the statute and that Gustin willfully failed to pay over taxes to the United States. We review these findings under a clearly erroneous standard. Fed.R.Civ.P. 52(a); *Wood*, 808 F.2d at 414.

### A. Responsible Person

Whether an individual is responsible under § 6672 for collecting, accounting for, or paying over employee withholding taxes is a question of duty, status, and authority. *Wood*, 808 F.2d at 415; *Howard v. United States*, 711 F.2d 729, 734 (5th Cir.1983). This circuit generally takes a broad view of who is a responsible person under § 6672. *See Wood*, 808 F.2d at 415. The statute applies to all responsible persons, not just to the most responsible person. *Howard*, 711 F.2d at 737. The central question is whether an individual had the effective power to pay taxes. *Id.* at 734. One does not cease to be a responsible person merely by delegating that responsibility to others, nor do instructions from a superior not to pay the taxes or the threat of being fired if one pays the taxes make one not a responsible person under

---

**4.** 566 F.2d at 55. This is the real concern in *Boynton*. The court stated: "Our decision reaches only the situation where the taxpayer's refund suit is jurisdictionally improper due to his failure to pay the assessment fully or failure to pay a properly divisible portion of the assessment...." *Id.* at 56–57. *Boynton* is thus "a narrow exception in *certain* tax cases." *Wong v. Bacon*, 445 F.Supp. 1177, 1184 n. 8 (N.D.Cal. 1977) (emphasis added). By its terms *Boynton* does not apply to this case, in which the jurisdictional defect was failure to file a refund claim, rather than failure to pay taxes. A district court in the Ninth Circuit has refused to apply the *Boynton* rule in a case where the jurisdictional defect of the taxpayer's suit was based on the Anti–Injunction Act and the Declaratory Judgment Act. The district court in that case retained jurisdiction over the government's counterclaim, which raised the same issues as the taxpayer's suit for an injunction. *Stern v. United States*, 563 F.Supp. 484, 489 (D.Nev.1983).

the statute. *Id.* We do not mean to suggest, however, that mere access to corporate funds makes one a responsible person under the statute. Employees of a corporation are agents, and a corporation may deny to an agent the actual authority to pay taxes. Requiring an employee to pay over taxes when he does not have the actual authority to do so would be tantamount to requiring any employee with mere access to company funds to steal funds that the company owes the government. Section 6672 does not impose such a responsibility upon any corporate employee, but the law does impose a duty on the employees not to dissipate the trust by paying other creditors with money owed to the government.

Gustin contends that he was not a responsible person under the meaning of the statute for the fourth quarter of 1981. The district court found that Gustin was a responsible person based on the following facts: Gustin held the title of president of the corporation and had authority over the day-to-day management of the corporation; Gustin had the authority to issue corporate checks under the amount of $2,500.00 without any approval, and had the authority to borrow money on behalf of the corporation; Gustin signed the employee tax returns for the third and fourth quarters of 1981; Gustin signed the payroll checks from which the taxes were withheld; and Gustin paid other creditors with funds due to the United States. Gustin argues that he was not a responsible person because he had no responsibility within the corporation for the calculation or payment of taxes, but that is irrelevant because Gustin had the actual authority to pay the delinquent taxes. Gustin also argues that he did not have the actual authority to pay the entire tax bill because his check writing authority was limited to relatively small amounts. Gustin never showed, however, that he had requested and was denied authority to pay the taxes, and the government demonstrated that he had been given authority to write checks for over the amount of $2,500.00 to other creditors. Furthermore, Gustin had a duty not to dissipate the trust, and it is undisputed that he used his check writing authority to pay other creditors during the time that money was due to the United States. The Internal Revenue Service would certainly not have objected to payment of the tax deficiency by several small checks. We hold, therefore, that the district court's finding that Gustin was a responsible person during the fourth quarter of 1981 is not clearly erroneous.

B. Willfulness

 In order to be liable for the 100 percent penalty under § 6672, the failure to pay over taxes must have been willful. Willfulness under the statute requires a voluntary, conscious, and intentional act, but not a bad motive or evil intent. *Wood,* 808 F.2d at 415. Willfulness is normally proved under the statute by evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the United States. *See id.; Howard,* 711 F.2d at 736. Willfulness under the statute includes reckless disregard of a known or obvious risk that trust funds would not be paid over to the United States. *Wood,* 808 F.2d at 415; *see also Mazo v. United States,* 591 F.2d 1151, 1154 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979) (reckless disregard includes failure to investigate or to correct mismanagement after being notified that taxes were due). Mere negligence, however, does not establish willfulness under the statute. *Feist v. United States,* 221 Ct.Cl. 531, 607 F.2d 954, 961 (1979); *Dudley v. United States,* 428 F.2d 1196, 1200 (9th Cir.1970).

As evidence of Gustin's willfulness, the district court found that Gustin had control over the disbursement of Great Western's funds during the fourth quarter, that he was authorized to sign checks from Great Western's checking accounts, that he did in fact pay employees and other creditors by check, and that there were sufficient funds in Great Western's checking account in December of 1981 to have paid the entire tax deficiency. These facts tend to establish that Gustin was a responsible person under the statute for the fourth quarter of 1981, but they do not bear on the issue of willful-

ness. Gustin did sign the tax returns for both the third and fourth quarters of 1981, but it was undisputed that the forms were blank at the time he signed them and were not filled out by him, and that the forms were filed with the Internal Revenue Service after Gustin left the company. Gustin's signature was also on the payroll checks for which the withholding taxes were due, but it was undisputed that Gustin did not calculate or fill out those checks. Furthermore, the payroll checks introduced into evidence state that taxes had been withheld; there was no information received by Gustin on the checks or in the course of signing and distributing them that should have put him on notice that the fourth quarter payroll taxes would not be paid over to the government. Although Gustin never received any information that the fourth quarter withholding taxes were not being kept in trust for the government, he was specifically notified that the third quarter taxes were delinquent. Given that the company had not been delinquent on their taxes in prior quarters, that Gustin made every reasonable effort to see that the third quarter taxes were paid, that he was repeatedly promised by the owners of the corporation that the taxes would be paid and that he had no reason to believe that the meeting between Internal Revenue Service agents and the owners of the corporation had not resolved the third quarter delinquency, we hold that Gustin cannot be charged with knowledge of the fourth quarter delinquency by reason of his actual knowledge of the third quarter delinquency, nor can Gustin's actions regarding the fourth quarter taxes be characterized as reckless. We therefore hold that the district court's finding that Gustin willfully failed to pay the fourth quarter taxes was clearly erroneous, and we reverse the district court's judgment of liability for the fourth quarter tax deficiency.

### IV. The Remand

We must remand the case on the question of Gustin's liability for the third quarter taxes for further factual findings by the district court. Obviously, the factors which make Gustin a responsible person for the fourth quarter do not make him a responsible person for the third quarter, because he did not assume the title or responsibilities of president of Great Western until October of 1981. The Supreme Court has held that § 6672 does not make a person assuming control of a company a guarantor of its past tax liabilities. *Slodov*, 436 U.S. at 253–54, 98 S.Ct. at 1788. Therefore, Gustin can only be a responsible person for the third quarter if he knowingly dissipated the trust fund. The Supreme Court has held, however, that 26 U.S.C. § 7501 does not impress a trust on "after-acquired funds." *Id.* at 259, 98 S.Ct. at 1791. Therefore, if the funds paid out to creditors by Gustin after he was notified of the third quarter tax deficiency were all acquired after he gained control of the company, then he would not be a responsible person under § 6672 for the third quarter taxes. If the district court finds on remand that Gustin did dissipate trust funds knowing that taxes were due to the United States, the district court must determine whether his failure to pay over the taxes to the United States was willful in light of his efforts to see that the taxes were paid and the representations made to him by the owners of the company that the taxes would be or had been paid. *See Feist*, 607 F.2d at 962.

That part of the district court's judgment is affirmed which dismissed Gustin's claim for refund of taxes paid for the third quarter of 1981; otherwise the judgment is reversed. Gustin is entitled to judgment on his claim for refund, and against the counterclaim, for the fourth quarter taxes. On remand the district court must decide the government's counterclaim for third quarter taxes which will depend upon findings of facts raised by Gustin's defenses, i.e. whether he was a responsible person for Great Western during the third quarter who willfully failed to pay the taxes.

AFFIRMED in part, REVERSED in part. Cause REMANDED for disposition consistent with this opinion.