**In re Eugene FONTENOT and Thelma Fontenot, Debtors.**

**Eugene FONTENOT and Thelma Fontenot, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 90–81523.**

**Adv. No. 92–8012.**

United States Bankruptcy Court,
W.D. Louisiana,
Lake Charles Division.

Jan. 25, 1993.

C. Jerre Lloyd, Lake Charles, LA, for plaintiffs.

Philip Doyle, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## REASONS FOR DECISION

GERALD H. SCHIFF, Bankruptcy Judge.

This matter involves a Complaint to Determine Dischargeability of Debt filed by the debtor in a confirmed Chapter 11 proceeding. The court has jurisdiction over this proceeding pursuant to 28 U.S.C. Section 1334. The case has been referred to this court by the Standing Order of Reference entered in this district and which is set forth as Rule 22.01 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(I).

## *FACTS*

The facts in this case are not in substantial dispute; the dispute exists with regard to the interpretation of those facts in light of the wealth of jurisprudence in this area.

During 1985, for the stated purpose of setting his daughter up in a business, Eugene Fontenot ("Debtor") "acquired" a cabinet making shop in Lake Charles, Louisiana. The exact nature of the acquisition is not clear from the testimony, but the court gleans from the evidence that this was no more than an asset acquisition. As part of the transaction, the former owner, Michael Moore, agreed to work in the business for a short period of time.

The daughter, Eugenia Fontenot ("Ms. Fontenot"), was approximately 27 years of age at the time, a college graduate, and had limited non-executive work experience. She had worked for a tree nursery doing landscape design and for a restaurant owned by the Debtor. Her job at the restaurant was low-level management, primarily in operations, with no responsibility in the area of payroll, tax-related matters, or financing.

The Debtor has had 7 or 8 different business ventures over the years. In 1969, after 12 years in the Air Force, he resigned his commission and returned to the Lake Charles area. His business ventures since then include a construction business, restaurants, and apartments.

Although the acquisition of the business from Michael Moore occurred sometimes in 1985, the business was not incorporated until early 1986. The business, Architectural Millwork & Design, Inc. ("AMD"), operated until July, 1990, when a seizure by the IRS resulted in termination of the business.

Ms. Fontenot, the Debtor, and AMD's CPA, Anthony LeBato testified at the trial of this matter. Thomas Moore, who testified by deposition, was an employee of Calcasieu Marine National Bank ("CMNB") during the relevant time periods and was the bank's loan officer with respect to loans involving the Debtor and his related activities. The testimony clearly establishes the following facts:

1. Ms. Fontenot did not have the financial wherewithal to acquire the business. Over the years, the Debtor had established a relationship with Calcasieu Marine National Bank of Lake Charles ("CMNB"). When he decided to acquire the business from Michael Moore, the Debtor went to CMNB for the necessary capital. The Debtor was required to become personally liable for all moneys loaned AMD by CMNB.

2. The Debtor decided when and by whom the business would be incorporated. He also chose the CPA who would do the required tax work for AMD.

3. Ms. Fontenot owned 52% of the stock of AMD, and was its president. The Debtor owned 48% of the stock and was the corporation's vice-president and secretary-treasurer. Ms. Fontenot and the Debtor constituted the board of directors of the corporation.

4. Ms. Fontenot ran the day-to-day business affairs of AMD, including hiring and firing and payroll. She was initially assist-

ed in the bidding process by Michael Moore, but upon his departure in 1987, she did this on her own. To the extent "keeping books" was accomplished during this time, she was the person doing this, although she would bring her checkbook and ledger to the CPA for tax preparation. Ms. Fontenot decided which creditors would be paid; no one directed her in that regard, although the Debtor did tell her at some point in time that she had to pay her vendors.

5. Although the Debtor was an authorized signatory on the AMD checking account established at CMNB, he did not sign any checks during the existence of AMD.

6. Sometimes during 1987, during the depressed economic times in southwest Louisiana, both AMD and the Debtor's other ventures fell upon hard times. Not unexpectedly, defaults occurred in AMD's monthly obligation to CMNB. Generally, the Debtor would have been contacted by a CMNB official when the AMD note was not paid. The Debtor would contact Ms. Fontenot who would then scrape up the necessary funds and pay the installment. Apparently, in this fashion, the AMD obligation to CMNB was kept in a somewhat satisfactory status.

7. AMD began falling behind in payment of its obligations in early 1987. Ms. Fontenot testified that she and her father, while generally experiencing a good parent-child relationship, did have some disputes over certain matters about which she did not elaborate. She felt this occurred because she was just like him—proud and head strong. They did discuss some problems she was having in collecting AMD's receivables and the impact this was having on her ability to pay bills in general. For whatever reason, she did not confide in him about the tax problems that were beginning to grow. Her testimony was that she was "embarrassed" to discuss this with him.

8. The Debtor acknowledged that he became aware of AMD's financial difficulties in 1987, although he could not be more specific. One benchmark in time was the summer of 1987 when Ms. Fontenot moved out of her parents residence to her own apartment. Both Ms. Fontenot and the Debtor testified that they did discuss AMD's financial problems while she was living with them.

9. In mid–1987, CMNB determined to shore up its collateral position with regard to the Debtor's obligations to the bank. A cross-collateralization occurred in early 1988.

10. The Debtor had experienced some tax problems in ventures other than AMD. Those tax liabilities, however, had been satisfied. The Debtor testified, however, that he was fully aware of his personal liability for those unpaid taxes.

11. The IRS filed four separate levies upon CMNB relating to 941 tax obligations of AMD, to-wit:

| Date of Notice | Quarter |
|---|---|
| 2–11–88 | 2/87 |
| 3–20–88 | 3/87 |
| 4–28–88 | 4/87 |
| 11–26–88 | 4/87 |

12. Thomas Moore contacted the Debtor immediately upon receipt of the notices. His testimony was that the notices were received at or about the date shown on each notice.

13. The parties stipulated that the unpaid withholding tax liability and the penalty associated with those taxes are as follows:

| Quarter | Unpaid Balance of Assessment | Applicable Penalty |
|---|---|---|
| 12/31/87 | $3,998.65 | $ 2,916.33 |
| 03/31/88 | 5,376.28 | 3,873.64 |
| 06/30/88 | 3,753.24 | 2,731.12 |
| 09/30/88 | 2,606.86 | 1,884.43 |
| 12/31/88 | 2,306.24 | 1,612.26 |
| 03/31/89 | 1,440.20 | 1,011.10 |
| 06/30/89 | 234.65 | 167.83 |
| 09/30/89 | 425.62 | 263.80 |
| 12/31/89 | 2,999.16 | 2,197.58 |
| 03/31/90 | 2,583.62 | 1,894.81 |
| Total Penalty | | $18,552.90 |

## LAW

Sections 6671 and 6672 of the Internal Tax Code provide in relevant part as follows:

Sec. 6671(b). Person defined.

The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

Sec. 6672(a). General rule.

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over ...

The manner in which Section 6672 operates was explained by the court in the case of *Gustin v. United States*, 876 F.2d 485, 491 (5th Cir.1989), as follows:

Employers are required to withhold income tax from employees' payroll checks. 26 U.S.C. section 3402. The withheld funds are then held in trust by the employer for the United States. 26 U.S.C. section 7501(a). If the trust funds are not paid over to the United States, 26 U.S.C. section 6672(a) imposes a 100 percent penalty for the withheld taxes on any responsible person who willfully failed to pay over the taxes. (Citations omitted.)

█ Liability for the penalty which is imposed pursuant to Section 6672 "is imposed only on (1) a responsible person (as defined in Section 6671), who has (2) willfully failed to perform a duty to collect, account, 'and' pay over the tax." *Mazo v. United States*, 591 F.2d 1151, 1153 (5th Cir.1979). Although the statute uses the conjunctive "and", the United States Supreme Court has concluded that the statute reaches responsible persons if they have any one of the 3 enumerated functions, *i.e.*, collecting, accounting or paying over the tax. *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

A recent expression from the Fifth Circuit on this issue is the case of *Morgan v. United States*, 937 F.2d 281, 284 (5th Cir. 1991), where the court stated:

Whether a taxpayer is a responsible person within the meaning of section 6672(a) is a matter of status, duty, and authority. (Citations omitted.) There can be more than one responsible person (citations omitted), and the Fifth Circuit generally takes a broad view of who qualifies as such. (Citations omitted.)

The central question is whether an individual had the effective power to pay taxes. (Citations omitted.)

Once the determination is made that the assessed individual is a responsible person, the inquiry must be made whether the failure to either collect, account for or pay over the tax to the government was "willful." The issue of willfulness was discussed in *Gustin*, at p. 492:

Willfulness under the statute requires a voluntary, conscious, and intentional act, but not a bad motive or evil intent. *Wood [v. U.S.]*, 808 F.2d at [411], 415 [ (5th Cir.1987) ]. Willfulness is normally proved under the statute by evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the United States. *See id.; Howard [v. U.S.]*, 711 F.2d [729] at 736 [ (5th Cir. 1983) ]. Willfulness under the statute includes reckless disregard of a known or obvious risk that trust fund would not be paid over to the United States. *Wood*, 808 F.2d at 415; *see also Mazo v. United States*, 591 F.2d 1151, 1154 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979) (reckless disregard includes failure to investigate or to correct mismanagement after being notified that taxes were due.) Mere negligence, however, does not establish willfulness under the statute. *Feist v. United*

*States*, 221 Ct.Cl. 531, 607 F.2d 954, 961 (1979); *Dudley v. United States*, 428 F.2d 1196, 1200 (9th Cir.1970).

## ISSUES

(a) Within the meaning of 26 U.S.C.A. Section 6672(a), was the Debtor a "responsible person" during the period October 1, 1987, through March 31, 1990, so as to make him responsible for the collecting, accounting and payment of withholding taxes of employees of AMD?

(b) If the Debtor was a responsible person under the statute, did he "willfully" fail to either collect, account for, or pay over such taxes to the government?

## DISCUSSION

■ Considering the facts set forth above, together with the "broad view" of the Fifth Circuit, the court has no difficulty in finding that the Debtor was a responsible person under Section 6672(a). "(R)esponsibility is a matter of status, duty and authority, not knowledge." *Mazo*, at p. 1156. As a corporate officer and director, together with being a signatory on the corporate checking account, the Debtor was clearly a responsible person within the meaning of Section 6672(a) and the jurisprudence thereunder. The most recent expression out of the Fifth Circuit is the case of *Raba v. U.S.*, 977 F.2d 941 (5th Cir. 1992). In *Raba*, the court discussed the *Turnbull [Turnbull v. U.S.*, 929 F.2d 173 (5th Cir.1992) ], *Wood, Howard* and *Gustin* cases, among others, and reaffirmed the circuit's position of taking the broad view of who qualifies as a responsible person. *Raba* supports this court's conclusion that the Debtor was a responsible person under the statute.

The issue of willfulness, however, is more difficult to resolve. In *Gustin*, willfulness was an issue about which the Fifth Circuit stated [p. 285]:

Willfulness under Section 6672(a) requires a voluntary, conscious, and intentional act, but not a bad motive or evil intent. *Gustin*, 876 F.2d at 492; *Bowen [v. U.S.]*, 836 F.2d [965] at 968 [ [(5th Cir.1988) ]; *Wood*, 808 F.2d at 415. Will-

fulness is normally proved by evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the government. *Gustin*, 876 F.2d at 492; *Wood*, 808 F.2d at 415; *Howard*, 711 F.2d at 736. Willfulness is also established if the responsible person acted with reckless disregard of a known or obvious risk that tax withholdings would not be paid over to the government. *Gustin*, 876 F.2d at 492; *Bowen*, 836 F.2d at 968; *Wood*, 808 F.2d at 415. Reckless disregard includes failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid. *Mazo*, 591 F.2d at 1154–55. Mere negligence does not establish willfulness. *Gustin*, 876 F.2d at 492. A responsible person's decision not to pay over withholding taxes does not cease to be willful because the person is ordered by another not to pay. *Howard*, 711 F.2d at 736. The responsible person bears the burden of proving his actions were not willful. *Bowen*, 836 F.2d at 968; *Mazo*, 591 F.2d at 1155; *Brown v. United States* [79–1 USTC P 9285], 591 F.2d 1136, 1140 (5th Cir.1979).

Since Mr. Fontenot did not write any checks out of the AMD account, the "normal" proof of willfulness is not present in this case.

■ The next inquiry, therefore is whether Mr. Fontenot acted "with reckless disregard of a known or obvious risk that tax withholdings would not be paid over to the government."

CMNB was served with four separate levies by the IRS in connection with delinquent 941 taxes owed by AMD. These notices dealt with the 2nd, 3rd and 4th quarters of 1987 and are attached to the deposition of Thomas Moore as Exhibits K–1 through K–4. The earliest Notice of Levy, Exhibit K–1, was dated February 11, 1988. Thomas Moore testified that upon receipt of each Notice of Levy he undertook to contact Mr. Fontenot and discussed the problem with him at the time.

Both the Debtor and Ms. Fontenot testified that they did discuss AMD's financial affairs from time to time. Ms. Fontenot lived with her parents until sometime in the summer of 1987 at which time she moved into her own apartment. Her testimony indicates that frequent disputes with her father arose.

By the end of the second quarter of 1987, the court believes that Mr. Fontenot knew or should have known that the taxes due the government were at risk of not being paid. This conclusion is reached by the fact that AMD was experiencing financial difficulties at the time, and IRS had filed three separate Notices of Levy against CMNB. Receiving notice of one levy might not be sufficient to conclude willfulness on the part of Mr. Fontenot with regard to future taxes. But learning of a second and then a third levy should have warned him that his daughter was not paying the tax obligation and was likely to continue disregarding payment of the tax in the future. By failing to "investigate or correct mismanagement", or to insure that the taxes due the government were in fact paid, Mr. Fontenot acted with reckless disregard sufficient to establish willfulness under the statute.

The court does take note of the fact that CMNB made a loan to AMD in November, 1988, which was after receipt of the first 3 IRS notices. An argument can be made that this indicates AMD's problems with IRS were resolved and that Mr. Fontenot should not be held to a higher degree of responsibility. From a review of Thomas Moore's testimony, CMNB was not concerned with the prior levies since they were apparently paid by the seizures. The decision to make the loan was a banking decision, however, and does not necessarily mean that taxes due by AMD were in fact being paid. There was obvious mismanagement at AMD which resulted in taxes due the government not being paid. Mr. Fontenot's failure to respond when he became aware of the circumstances results in satisfaction of the element of willfulness.

Consequently, the court holds that the Debtor is liable for the penalty commenc-

ing with the third quarter of 1988. Conversely, there is no liability for the fourth quarter of 1987 and the first and second quarters of 1988.

A separate order is being entered this day in conformity with these reasons.